## SILOAM SPRINGS v. THOMPSON.

1. **LIQUOR**: *Power of county court to grant license to sell.*

Under the act of March 19, 1881, the county court could not grant. license to sell liquor in any township or city ward in the county unless at the previous general election there was a majority vote "for license," both in the county and in the ward or township in which it was applied for. Where there was no vote at all on the question,. no license could be granted.

2. **SAME**: *Power of city council to license, etc.*

A city council has power under the incorporating act of March 9,. 1875, to license dramshops, etc., without limit on the price for license, except that it cannot license the sale of liquor in a ward in which there was not a majority vote *for* license at the last general election; and for selling without city license the offender is liable to the penalty of the ordinance prohibiting such sales, though the city has no power, for want of such majority vote *for* license, to issue license.

APPEAL from *Benton* circuit court.

Hon. J. M. PITTMAN circuit judge.

*L. H. McGill* for appellant.

Cities and towns are authorized to license, regulate, tax and suppress tippling houses, etc., within their limits, *Acts 1874–5, p. 8, sec. 12; Acts 1883, p. 97*, but they cannot grant a license in any ward of a city unless there

has been a majority vote in such ward *for license.* *Ib.* and *Erb v. State, 35 Ark., 638; Acts 1881, p. 132; Acts. 1879, p. 36.*

There having been no majority vote *for license* in any of. the wards of said city at the previous general election, no· license could be issued by the city to appellant, and he was. liable under the city ordinance as well as the State law. *Erb v. State, supra; 6 Baxter, 567; Cooley Const. Lim.,. 5th Ed., 242; 1 Dillon Mun. Corp., 3rd Ed., sec. 368..*

The ordinance was consistent with the general laws of the State, and as no license could be granted, was an ordi-- nance *suppressing* dramshops.

STATEMENT.

ENGLISH, C. J.   On the nineteenth of March, 1883, oath, was made before the mayor of the city of Siloam Springs,. that H. Thompson did, on the seventeenth day of said month, keep a dramshop or tippling house within the cor-- porate limits of said city, without having procured license therefor from the mayor thereof.   He was tried and con-- victed thereof, and fined fifteen dollars.   He appealed to the circuit court of Benton county, where the case was tried. anew by the court, sitting as a jury, and he was found not. guilty and discharged.   The city was refused a new trial,. took a bill of exceptions and appealed to this court.

The trial was upon an agreed statement of facts, from, which it appears :   That the city council, on the nineteenth of February, 1883, regularly passed and published an ordi-- nance No. 47, which was read in evidence, and is in sub-- substance as follows :

Section 1 made it unlawful for a person to keep a dram-- shop or tippling house within the corporate limits of said. city for the sale of any ardent, vinous, malt or fermented liq-- uors in quantities less than one quart, without first procur-- ing a license therefor from the mayor of said city.

Sec. 2 authorized the mayor to grant licenses to keep such dramshop or tippling house within the corporate limits of the city to any person of good moral character, of the age of twenty-one years or more.

Sec. 3 required the applicant for license to present to the mayor his application therefor, verified by affidavit, setting forth the ward of the city in which such dramshop or tippling house was to be kept, the length of time the applicant desired such license, and his age.

Sec. 4 fixed the price of the license at fifty dollars for each month, or part of month, or $300 for six months.

Sec. 5 provided that upon proper application the license might be granted on or after the first of January of each year for any length of time, but should not extend beyond the thirty-first day of December following the date of the license—provided, that no such license should be granted to any person to keep such dramshop or tippling house in any ward of said city when at the previous general election a majority of the votes cast in such ward on the question of license, was cast against license.

Sec. 6 provided that any person keeping a dramshop or tippling house within the corporate limits of the city, without procuring the license as required by the ordinance, should be subject to a fine of not less than fifteen nor more than twenty-five dollars for the first offense, and for any subsequent offense not less than ten nor more than fifteen dollars.

Sec. 7 made each day, or part thereof, that such dramshop or tippling house should be kept in violation of the ordinance, a separate offense.

Sec. 8 repealed other ordinances on the subject, etc., and provided that the ordinance should take effect and be in force from and after its publication.

That after the publication of the ordinance, and on the seventeenth day of March, 1883, the defendant kept a dram-

shop or tippling house within the corporate limits of said city for the sale of ardent, vinous, malt and fermented liquors in quantities less than one quart, without having procured license from the mayor of the city, authorizing him to keep such dramshop or tippling house, as required by said ordinance.

That defendant, on the first day of January, 1883, obtained from the county court of said county, license beginning on that day, and expiring thirty-first day of December following, authorizing him to keep a dramshop in said city.

That at the general election in September, 1880, the electors of the town of Siloam Springs, which had not then been organized as a city of the second class, voted with the other electors of Hico township, in which said town was situated, at the voting place of said township, which voting place was outside of the limits of said town, and that a majority of the votes of said township and town so cast en masse on the question of license was against license.

That subsequently and before the next general election of 1882, said town was organized as a city of the second class and divided into three wards, still remaining in said Hico township. That at said general election in September, 1882, the votes of said township and said city were cast at the same place and in the same manner as at the previous general election, and that a majority of such votes on the question of license was for license.

That there had never been any separate vote in said Siloam Springs, either while it was a town, or after it had been a city of the second class, or in any ward thereof, on the question of license.

That at the general election of 1882, a majority of the votes of Benton county on the question of license was for license.

On the above facts, the city asked the court to declare the law to be as follows:

1st. That the defendant could be punished for violating the ordinance in question, by keeping a dramshop or tippling house, within the corporate limits of the city of Siloam Springs, without procuring a license from the said city, as provided in said ordinance, although he may have obtained a valid State and county license to keep such dramshop or drinking saloon before the passage of such ordinance.

2d. That the fact that no election had ever been held in the city of Siloam Springs, nor in any of the wards thereof, on the question whether license should be granted by the county court to any person to keep a dramshop in such city, or in such ward of the city, is no defense to the charge in this case of violating said ordinance.

3d. That, under the law and facts in this case, the defendant is guilty, and that plaintiff recover.

Which declaration of law the court refused to make, and the city excepted.

The court found the facts to be : "That within one year before the filing of the charge herein, and after the passage and publication of ordinance No. 47 of said city, defendant did keep a dramshop and drinking saloon in said city without first having procured license from the proper authorities of said city to keep said dramshop or drinking saloon.

"That at the general election held in said county in September, 1882, a majority of the votes cast in said county of Benton was for license ; that the majority of the votes cast in the ward of said city in which defendant's saloon is located was not for license, and that there was no separate election held in such ward.

"That said ordinance is inoperative because it does not appear that the majority of the votes cast in said ward at the last general election was for license.

"That said city had no power or authority to punish said defendant for a violation of the same."

And the court declared the law to be for defendant, and rendered judgment discharging him.

The motion for a new trial was upon the grounds :

1st. That the findings and judgment of the court were contrary to the evidence.

2d. That they were contrary to law.

3d. That the court erred in refusing to declare the law as asked for the plaintiff.

## OPINION.

The questions presented on this appeal are, whether the license ordinance of the appellant city was valid, and if valid, whether on the facts of the case, appellee was punishable for its violation.

Ordinances of cities must not only conform to their charters, but they must be consistent with the general laws of the State.

The State first adopted the policy of prohibiting the county courts from granting dramshop licenses, except upon the petition of a majority of the voters of the township in which it was proposed to establish a dramshop. *Gantt's Dig.*, sec. 571, etc.

By act of April 30, 1874, the State adopted the policy of submitting the question of granting liquor licenses by the county court (then board of supervisors) to the electors of townships, wards of cities and incorporated towns. *Acts 1874, p. 48, Whittington ex parte; 34 Ark., 395.*

By the acts of March 8, 1879, (*Acts of 1879, p. 33*) this and the former act were repealed, and it was enacted in substance that at each general election there should be submitted to the electors of each township and ward of a city in this State the question whether license should be granted by the county court to any person to keep a dramshop or drinking saloon in such township or ward. And if at such election a majority or equal number of votes of any

township or ward should be cast against license, then it should not be lawful for the county court to grant license to any person to keep a drinking saloon or dramshop in such township or ward. *Secs. 7, 8, 9.*

In *Erb. v. The State, 35 Ark.*, *638*, it was decided that *sections 7, 8 and 9* of this act plainly required a majority vote of the electors of any township or ward in favor of keeping a dramshop or drinking saloon therein before the county court could lawfully grant such license ; that there was no power in the court to issue such license except upon such favorable vote.

The act of March 19, 1881, (*Acts of 1881, p. 132*) made a material amendment of the act of eighth of March, 1879. It provides in substance that at each general election there shall be submitted to the electors of each county the question whether license shall or shall not be granted by the county court of such county, for the sale of vinous, ardent, malt or fermented liquors, etc., within such county for two years, etc. *Sec. 1.*

And if at such election the majority of the votes cast in any county upon the question be not "*for license,*" then it shall be unlawful for the county court of such county to grant license for the purpose mentioned in the preceding section, at any place within such county, until after the next general election.

But if a majority of the votes cast in any county upon the question be "*for license,*" then it shall be lawful for the county court of such county to grant license for the purposes aforesaid, to persons of good moral character, over the age of twenty-one years, within any township, town or ward of a city in such county, where the majority of the votes cast upon the question was "for license," but in no other. *Sec. 2.*

It appears that at the general election in September, 1882, a majority of votes in Benton county upon the question of license was "*for license.*" Hence it was lawful for

.LIQUOR: Power of county court to grant license to sell.

Siloam Springs v. Thompson.

the county court of that county to grant license to any person of good moral character, etc., within any township, town or ward of a city in said county, where the majority of the votes cast upon the question was *"for license,"* but in no other.

But at that general election the electors of the appellant city did not vote at all on the question of license at either of the three wards of the city; they went to Hico, out of the city limits, and voted with the electors of that township. There being no vote in either ward of the city *"for license,"* it was not lawful for the county court to grant a license to any person to keep a dramshop or drinking saloon within the limits of the city, until after the next general election, and a majority vote for license as is held in *Erb v. State, sup.*

*No vote, no license.*

Such was the general law of the State regulating the granting of dramshop license by the county court at the time when the alleged offense was committed by appellee against the city ordinance in question.

We turn now to look at the law prescribed for the government of cities on the subject of dramshops or tippling houses.

By section 12 of the act of March 9, 1875, for the incorporation, organization and government of municipal corporations (*Acts 1874-5, p. 8*) a city council has power "to license, regulate, tax or suppress, etc., tippling houses and dramshops: *Provided* the city or town council shall not grant a license to any tippling house, dramshop or saloon, or permit such houses, shops or saloons to carry on such business in any ward of the city, or incorporated town, when at the previous election a majority of the votes cast were against license in such ward of a city or incorporated town."

*2. SAME: Power of city council to license.*

By section 22 of the act, municipal corporations are empowered to make and publish from time to time by-laws or ordinances not inconsistent with the laws of the State, to carry into effect the powers conferred by the act.

The ordinance of the appellant city in question is in conformity with section 12 of the act, and is not inconsistent with any law of the State. ·

The act does not limit the price which a city council may fix for a license to keep a tippling house or dramshop within the limits of the city, or prescribe any particular time in which ordinances on that subject may be passed. The only restriction upon a city council is that it shall not grant license to keep a tippling house or dramshop in any ward of the city where at the previous election a majority of the votes cast was against license. The ordinance in question, in its terms, conforms to this limitation upon the powers of the city council.

But plainly, under the act and under the ordinance, there must not only be no majority vote against license at the previous election, but there must be a majority vote for license to make it lawful for the mayor to grant license, as held in *Erb v. State*, in construing the act of March 8, 1879, where similar language was used, and this construction makes the organic law of cities and the ordinance in question conform to the general policy of the State on the subject of dramshop licenses, etc.

At the general election of 1882 there were no votes cast in the wards of the appellant city on the question of license, hence there was no majority against, and certainly none *for license*. The mayor of the city was therefore not authorized at the time of the alleged offense to grant to any person a license to keep a tippling house or dramshop within the limits of the city.

Appellee thought proper to keep a dramshop within the the limits of the city, regardless of the ordinance, and he subjected himself to the penalty prescribed thereby for such offense.

It may be said that it is a hard measure to punish a man for keeping a dramshop within the limits of a city without

license, when he can get none. But such was the plea in *Erb's* case, and it was held unavailing.

The judgment of the court below must be reversed, and the cause remanded for a new trial.