## Doss *v.* Moore.

### Opinion delivered April 20, 1901.

LIQUORS—LICENSE—INCORPORATED TOWN.—Under act of March 19, 1881, providing that if a majority of the votes of a county be "for license," it shall be lawful for the county court to grant licenses within any township, town or ward of a city, where the majority of the votes cast upon the question was "for license," if an incorporated town is not a separate election precinct, but is in a precinct composed of the entire township, and a majority of the electors in the county and township vote in favor of license, a license may be granted in such town.

Appeal from White Circuit Court.

JOHN T. HICKS, Special Judge.

STATEMENT BY THE COURT.

In January last the county court of White county granted license to C. T. Doss, Jr., & Co. to sell liquors in the town of Beebe during the year 1901. Afterwards Edwin Moore and other citizens of Beebe filed a petition in the White circuit court asking for a writ of *certiorari* to bring up and quash the order of the county court granting license. The defendants filed a response to the petition, which showed the following facts: Beebe is an incorporated town in Union township of White county. There is no separate voting precinct for the town, but the town and township are both included in one precinct, the voting place for which is

in the town. At the general election held in September, 1900, a majority of the voters in White county voted "for license," and a majority of the voters in Union township, in which the town of Beebe is included, also voted for license, but no separate election was held for the town. The circuit court sustained a demurrer to the response, and quashed the order of the county court granting license. The defendant excepted and appealed.

*J. H. Harrod* and *Roberts & Roberts,* for appellants.

The court erred in holding that a separate election had to be held in each town, in addition to the vote at the general election. *Cf.* Sand. & H. Dig., §§ 4867, 4868. The word "town," as used in Sandels & Hill's Digest, § 4869, is without special significance. 48 Ark. 307; 34 Ark. 263; 37 Ark. 49; 59 Ark. 237.

*Grant Green, J. N. Cypert* and *W. E. Atkinson,* for appellees.

There was no error in the ruling of the court as to the necessity of a separate expression of the citizens of each town in the liquor question.

RIDDICK, J., (after stating the facts). In this case the circuit court quashed the order of the county court granting license to sell liquors in the incorporated town of Beebe on the ground that no separate election was held in the town on the question of granting license. The court, in other words, was of the opinion that an election must be held in an incorporated town separate from the township, and that a majority of the votes cast in the town must be in favor of license, before license to sell liquors in the town can be granted. The decision of this question depends upon a construction of the act of March 8, 1879, as amended by the act of March 19, 1881. The act of 1879 provided that at the general election for state officers there should be submitted to the electors of each township and ward in the state the question as to whether or not license shall be granted for the sale of ardent liquors, and provided further that, if a majority of the votes cast in any township or ward of a city on that question be for license, then it shall be lawful for the county court to grant license. Acts 1879, pp. 35, 37-9. It will be noticed that under this act of 1879 it was not required as a prerequisite to granting license that the majority of the votes in the county should be in favor of license, but only that a majority of the votes in the particular township or ward where license was granted should have been cast for license. The act

of 1881 amended two sections of this act. The statute, as amended, required the question of license or no license to be submitted to the electors of each county, and provided that, if a majority of the votes cast on that question in the county be against license, it should be unlawful to grant license at any place in the county until after the next general election. It also provided that, "if a majority of the votes cast in any county upon the question be 'for license,' then it shall be lawful for the county court of such county to grant licenses for the purposes aforesaid to persons of good moral character over the age of twenty-one years within any township, town or ward of a city in such county, where the majority of the votes cast upon the question was 'for license,' but in no other." Acts 1881, p. 132, §§ 1, 2.

Now, it seems obvious that the main purpose of this amendment to the act of 1879 was to require the vote of the whole county to be taken on the question of license, and to forbid the granting of license to sell intoxicating liquors at any place in the county where the majority of the votes in the county was not cast for license. Previous to the passage of this amending act, if one ward or township in a county, however small, voted in favor of license, it was lawful to license the sale of liquors there, though nine-tenths of the voters of the county may have been opposed to license, and may have voted against the granting of license. This was changed by the amendment, so as to require, not only a majority vote in the township or ward, but also in the county, before license could be granted. The amendment also provided that licenses to sell liquors should only be granted "to persons of good moral character over the age of twenty-one years." These, we think, were the chief purposes of the amendment.

But the circuit court no doubt rested its judgment on the provision of the amending statute above quoted to the effect that, if the vote in the county was in favor of license, then license might be granted in "any township, town or ward of a city in such county where the majority of the votes cast upon the question was for license, but in no other." This language, if read by itself, does seem to support the ruling of the circuit court; and, if the amending act was the whole law on the subject, we could concur in that ruling. But in arriving at the meaning of the legislature in passing this amendment the whole law must be read together. There are twenty sections in the act of 1879, and only two of them were amended. Reading the whole act together as amended, it seems

plain that the legislature did not intend to require a separate vote in each town in the state, or even in each incorporated town, or it would have said so. The intention was to require a majority vote in favor of license in the whole county as a prerequisite to the granting of license, and it expressly requires such a vote to be taken, but says nothing about a separate vote in either towns or incorporated towns. The statute, as it now stands, provides that the question as to whether license shall or shall not be granted by the county court shall be submitted to the qualified electors of the county at each general election for state officers. It further provides that such election "shall be held at the same time and place and in the same manner as other elections." Sand. & H. Dig., §§ 4867, 4868. Now, the statute covering elections requires that the general election for state officers, at which election, as above stated, the question of license must be submitted, shall be held in each precinct and ward of the state. Sand. & H. Dig., § 2598. At the time these statutes in reference to the granting of license were enacted, the law also required that each county should be subdivided into townships by the county court, and a place fixed in each township for holding elections therein, and further provided that no township line should pass through any town, but required that the whole of each town should be included in one township. Sand. & H. Dig., §§ 7340-7344. It thus appears that at the time these statutes requiring elections to determine whether license should be granted were enacted the only places in which the law required elections to be held at the election for state officers were townships, wards and election precincts. The townships and wards were all election precincts, but there was no requirement that elections should be held in incorporated towns separate from the townships in which they were located, unless such towns were election precincts. As before stated, the election precincts were usually townships and wards. In the county the different townships, in the cities the wards, were the election precincts. It was rare that a town was made a separate election precinct. Now, these statutes requiring elections on the question of license made no change in the voting precincts, but, on the contrary, expressly provided that the election should "be held at the same time and place and in the same manner as other elections." As the legislature certainly intended that each community or subdivision of the county where license was prohibited except on condition of a majority vote should have an opportunity of expressing its will on the question

of license, and as it neither made nor suggested any change in the election precincts, or in the time and place of holding elections, it is evident that it supposed that the will of those subdivisions which it desired to be made known could be expressed by holding elections in the different townships, wards and election precincts of the state as then constituted.

We therefore conclude that it was not the intention of the legislature, or the meaning of the statute, that a separate vote should be had in those towns which are not separate election precincts. Every ward and every township was, at the time these statutes were enacted, a separate election precinct, and it was therefore necessary, under these statutes, before license to sell liquors could be granted in a ward or township, that a majority vote should be cast therein in favor of license. *Siloam Springs* v. *Thompson,* 41 Ark. 456. But it was and is exceptional for a town to be a separate election precinct, and we do not think this statute intended to require separate elections in those towns which are not separate election precincts. If the town is not a separate election precinct, and a majority of the electors of the county and township in which the town is situated vote in favor of license, then license to keep a saloon in the town may be granted, it being in such case only a part of the township.

It results from what we have said that, in our opinion, the circuit court erred in sustaining the demurrer and quashing the judgment of the county court. Though the case was disposed of by the circuit court on demurrer, we infer from statements in briefs of counsel that the point above decided settles the case. For this reason we deem it unnecessary to notice the question raised as to whether *certiorari* was the proper remedy of petitioners in this case, for, considering that it was proper, there is nothing to show that the judgment of the county court was either void or erroneous.

For this reason, the judgment is reversed, and cause remanded, 'with an order to overrule the demurrer to the response, and for further proceedings.