BORDWELL *v.* STATE.

Opinion delivered December 2, 1905.

1. PROHIBITORY ORDER—REVOCATION—EFFECT OF REVERSAL.—Where an order of the county court revoking an order prohibiting the sale of liquor was reversed upon appeal to the circuit court, the effect of the reversal was to set aside licenses to sell liquor which had in the meantime been granted by the county court. (Page 165.)

2.  LIQUOR LICENSE—JURISDICTION OF COUNTY COURT.—Under Kirby's Digest, § 5120, providing that if the majority of the votes cast at a general election upon the question as to whether license to sell liquors shall be granted be for license, "then it shall be lawful for the county court to grant licenses," etc., the jurisdiction of the county court depends upon the result of the election, and not upon whether the county board of election commissioners made return of the election upon this question to the county court. (Page 165.)

3.  ELECTION—PLACE OF HOLDING.—An election was not void because, instead of being held at the place lawfully fixed for that purpose, it was held at another place near at hand, if persons attending the election at the latter place would be seen from the former place, and it did not appear that any one was misled. (Page 166.)

4.  SAME—VALIDITY OF LIQUOR LICENSE.—Under Kirby's Digest, § § 5118, 5119, providing that the question whether license to sell shall be granted or not shall be submitted at each general election for State officers, and that "such election shall be held at the same time and place and in the same manner as other elections," the fact that, in an election held in a ward of a city, electors residing in the township but outside of the ward voted upon the question of license did not vitiate the election so held or render it unlawful to grant license to sell liquors therein. (Page 166.)

5.  PROHIBITORY ORDER—EFFECT OF APPEAL WITHOUT SUPERSEDEAS.—An order of the county court revoking an order prohibiting the sale of liquors within a three-mile radius is self-executing, and is not suspended by an appeal therefrom without supersedeas. (Page 167.)

Cross appeals from Jackson Circuit Court; FREDERICK D. FULKERSON, Judge; reversed.

*M. M. Stuckey, W. S. Wright, Gustave Jones* and *John W. & Jos. M. Stayton,* for appellants.

1.  The county court has power to grant license in all parts of the county where license has carried, except portions affected by prohibitory orders.

2.  The second revocation of the prohibitory order revived the licenses. The judgment of the county court was self executing, and could not be suspended by filing supersedeas bond. 73 Ark. 66.

3.  The fact that township and ward electors voted at the same precinct, does not invalidate the election on the question of license. 69 Ark. 258; 70 Ark. 395. The election cannot be collaterally attacked, nor impeached except by contract. 61 Ark.

247; 28 Ark. 417. In a contest illegal votes, if cast, would be eliminated—but they would not invalidate the election. 32 Ark. 553; 53 Ark. 161.

4. Certiorari will not lie where the right of appeal exists. 69 Ark. 587; 61 Ark. 605; 62 Ark. 196; 73 Ark. 604.

*J. M. Bell, Joseph W. Phillips, G. A. Hillhouse, O. W. Scarborough* and *S. D. Campbell,* for appellees.

1. Certiorari lies where the inferior tribunal has exceeded its jurisdiction, as well as where it is without jurisdiction. 37 Ark. 532; 39 Ark. 347; 43 Ark. 341; 52 Ark. 213; *Id.* 87; 66 Ark. 139; 69 Ark. 258.

2. The county court had no jurisdiction to issue license. In proceedings purely statutory, and not in course of the common law, every jurisdictional element must affirmatively appear of record. 59 Ark. 483; 54 Ark. 643; 51 Ark. 35; 48 Ark. 238; 65 Ark. 142; 11 Am. St. Rep. 808; 69 Ala. 569. Prerequisites to the county court's authority to order to the issuance of license: (1) A majority of votes "for license" cast at a general election. Kirby's Digest, § § 5118, 5119, 5120. (2) The fact that "for license" has received a majority of the votes cast must be evi⁻denced by the election returns, sealed and forwarded to the board of election commissioners, by said board laid before the county court, and a record order of the county court finding such majority upon the returns before it. Kirby's Digest, § 5119.

BATTLE, J. On the 10th day of March, 1903, the State of Arkansas and J. E. Wilmans and eleven other inhabitants of certain districts in the county of Jackson, wherein the sale of liquor was prohibited by an order of a county court, instituted a proceeding in the Jackson Circuit Court against John M. Jones, county judge of said county, E. L. Boyce, county clerk, Henry Bordwell and four other liquor dealers, to quash the licenses granted to such dealers to sell liquor in said districts and in the city of Newport in the year 1903, and to prohibit the sale of liquor therein. The circuit court rendered judgment quashing the licenses, prohibiting the county court of Jackson County from granting liquor license in the first ward of the city of Newport until after the general election to be held in the year 1904, and the operating of saloons within three miles of a certain

Methodist church in the town of Jacksonport; and the defendants appealed.

On the 22d day of January, 1901, the county court of Jackson County made an order prohibiting the sale of liquor within three miles of a certain church in the town of Jacksonport, on petition of the majority of the adult inhabitants of that district. The order was to continue in force for two years, "and until, upon a petition of a majority of the adult inhabitants of such territory," the county court shall make an order nullifying and revoking the same. The county court attempted to revoke it on the 21st day of February, 1903, but, on appeal to the circuit court, the county court was reversed, and the prohibitory order was left in force. This was on the third day of July, 1903. On the tenth day of July, 1903, the county court, on the petition of what it found to be a majority of the adult inhabitants of the district, revoked the prohibitory order the second time. An appeal from the last order was taken to the circuit court, but the order was not superseded or suspended, and the appeal is still pending.

The board of election commissioners of Jackson County divided Union Township in that county into two election precincts. One of these was the second ward of the city of Newport, and the other was the first ward of that city and the remainder of that township. The place fixed for voting in the first mentioned precinct was Stephen's livery stable in the second ward, and in the other precinct the hose house in the first ward. The courthouse of Jackson County and Stephen's livery stable are in the second ward, in the same block, on the same street, and on the same side of it, and within a short distance of each other. The general election of the first Monday of September, 1902, for the precinct composed of the second ward was held at the courthouse. There was a crowd assembled in front of the courthouse while the election was being held. Previous elections in the second ward were held at the courthouse, and there was a general expectation that the election of 1902 would be held at the same place. There is no reason to believe that any one lost his vote by it being so held. The general election of 1902, for the other precinct, was held at the hose house, The electors of the first ward and of that part of Union Township not included in Newport voted at that place. Territorially, Newport is a small part of Union Township.

On the 15th of September, 1902, the county board of election commissioners filed with the clerk of the county court of Jackson County a report of the result of the general election of 1902, including the vote for license and against license, from which it appears that a majority of the votes cast in the county and in the city of Newport, and in each ward, and in Union Township, were for license, but in the certificate appended to the report nothing is said about the vote for license or against license. On the 3d day of September, 1903, the county court of Jackson County, by a *nunc pro tunc* order, noted the filing of such report.

On the 21st day of February, 1903, the county court of Jackson County, immediately after the first revocation of the prohibitory order made on the 22d day of January, 1901, and before any appeal or supersedeas was allowed, granted licenses to the five liquor dealers, who were made defendants to this proceeding, to sell liquor in the city of Newport and within three miles of the Methodist church in the town of Jacksonport, and ordered that the licenses continue until the 31st of December, 1903. Three of them (five liquor dealers) were thereby licensed to sell liquor in the first ward of that city, and the other were licensed to sell in the second ward. In each of the orders granting license the court found that the majority of the votes cast in Jackson County, in Union Township, in Newport, and each ward thereof, at the general election of 1902 were for license.

The record shows that the county court of Jackson County had jurisdiction to grant the licenses to the five liquor dealers, and fails to show any reversible error in the exercise of the jurisdiction. It is true that the first order of the county court revoking the prohibitory order, upon appeal to the circuit court, was reversed. But the effect of the reversal was to set aside the license. The licensees then stood in the attitude of persons without license. *State* v. *Doss,* 70 Ark. 312; *Viefhaus* v. *State,* 71 Ark. 419. Certiorari or any other proceeding did not lie to quash their licenses, because they had already been set aside, and they (licensees) were amenable to the laws prohibiting the sale of liquor without license.

Appellees contend that the county court of Jackson County was without jurisdiction to grant license to sell liquor in the year

1903 because the county board of election commissioners of Jackson County failed to lay before it the returns of the general election of 1902 in that county at its next term held thereafter. But the jurisdiction did not depend upon that fact, but upon the actual result of the election.  The statute upon this subject says: "If, at such election (general election), the majority of the votes cast in any county upon the question be not 'for license,' then it shall be unlawful for the county court of such county to grant license for the purposes mentioned in the preceding section at any place within such county until after the next general election. But if a majority of the votes cast in any county upon the question be 'for license,' then it *shall be lawful* for the county court of such county to grant licenses for the purposes aforesaid to persons of good moral character over the age of twenty-one years within any township, town or ward of a city in such county where the majority of the votes cast upon the question was 'for license,' but in no other, and the same is not otherwise prohibited, subject to the conditions and restrictions of this chapter." Kirby's Digest, § 5120.  The county board of election commissioners was obviously required to lay the returns of the election before the county court for its information.  It would be unreasonable to make the jurisdiction of the court dependent upon that act.

It is said that there was no lawful election held in the second ward of Newport, and that the county court had no authority to grant license to sell liquor in that ward in the year 1903, because the general election of 1902 for that ward was held at the courthouse, instead of Stephen's livery stable, the place lawfully fixed for that purpose.  But that was not fatal.  The two places were near each other.  The general expectation was that it would be held at the courthouse, where previous elections had been held; and the crowd of persons assembled before the courthouse and attending the election could be readily seen by any one going to the livery stable for the purpose of voting; and it does not appear that any one was misled.  McCrary on Elections (4 Ed.), § § 158-160.

Electors residing in Union Township and outside of Newport voted at the general election of 1902 held in the first ward.  It is argued that this vitiated the election held in that ward, and

made it unlawful to grant license to sell liquor therein in the year 1903. But this is not correct. The law does not require that the election as to the licensing the sale of liquor shall be held in each ward for such ward and no other territory, but provides that "such elections shall be held at the same time and place in the same manner as other elections." Kirby's Digest, § 5119. In submitting the question in this manner it evidently intended that a majority of those voting at any particular place prescribed by law for that purpose shall decide the question as to the territory for which it is the place of .voting, and, the majority of votes cast in such precinct and the county being in favor of license, that it shall be lawful to grant license to sell liquor in any part of such territory upon the terms prescribed by the statutes; otherwise such an election would be held to decide a question it could not decide. But no such folly can reasonably be imputed to the Legislature. Kirby's Digest, § § 5118-5120; *Doss* v. *Moore,* 69 Ark. 258; *Wallace* v. *Cubanola,* 70 Ark. 395.

The appeal taken from the second order of the county court of Jackson County revoking the order prohibiting the sale and giving away of liquors within three miles of the church in Jacksonport did not suspend such order. It is self-executing, and remains in force until set aside or superseded. *Reese* v. *Steel,* 73 Ark. 66. This was not done. It was therefore erroneous to inhibit the operating of saloons in such three-mile district on account of the prohibitory order.

Judgment of circuit court is reversed, and the proceeding instituted by appellees is dismissed.