James C. McComb v. William H. Dutton, Collector of Claymont's Special District School Taxes.

1. Statutes—Mere Irregularity Should Not Defeat Purpose of Statute Conferring Power to Tax.

While a statute conferring the power to tax must be followed strictly, mere irregularities should not be allowed to defeat its real purpose or render proceedings thereunder illegal.

2. Elections—Harmless Irregularity in Time of Opening and Closing Polls Will Not Vitiate Election.

Statutes fixing the time of opening and closing the polls at an election are so far directory that an irregularity not depriving a legal voter of his vote or admitting a disqualified person will not vitiate the election.

3. Schools and School Districts—Tax Election, Held According to Daylight Saving Time, Held Not Void.

A district school tax election under 32 *Del. Laws*, *c.* 160, providing that the polls shall be kept open from 2 to 5 p. m., *held* not void because held from 2 to 5 p. m. daylight saving time, in the absence of any law making standard time the lawful time or any showing that daylight saving time was not the recognized time in the district.

4. Schools and School Districts—Tax Election Held Not Void Because of Itemized Statement in Notice of Manner in Which Money Was to be Used.

A school tax election, the notice of which expressly stated that the proposed tax was for school purposes, as required by 32 *Del. Laws*, *c.* 160, § 54, *held* not void, because of an itemized statement of the manner in which the money was to be used, especially where such statement followed closely the official school budget provided for in *Chapter* 14.

5. Schools and School Districts—Tax Held Not Void as in Excess of Amount Stated in Notice of Election.

That the aggregate amount of a proposed school tax, as shown by an itemized statement of the purposes for which the money was to be used in the

notice of the election, exceeded the amount which the notice stated the voters would be asked to vote for, did not render the tax void, where the additional 10 per cent. authorized by the statute for delinquencies and costs of collection was improperly included in the aggregate.

6.  SCHOOLS AND SCHOOL DISTRICTS—SCHOOL TAX ASSESSMENT PRESUMED MADE AT PROPER TIME.

A school tax assessment made as authorized by 32 *Del. Laws*, *c.* 160, § 54, par. 5, which designates no specific time for making the assessment, will be presumed in action to recover back a tax paid under protest to have been made at the proper time, in the absence of any showing to the contrary.

7.  SCHOOLS AND SCHOOL DISTRICTS—BOARDS' POWER TO FIX TAX RATE AFTER ELECTION NOT AFFECTED BY STATEMENT OF RATE IN NOTICE OF ELECTION.

The statutory power of a district board of education to fix a tax rate, "upon completion of the assessment," to raise the amount of tax authorized at a preceding election, *held* not affected by the statement of a different rate in the notice of the election; the fair inference being, in the absence of any showing to the contrary, that the assessment was made after the election, so that the earlier rate, fixed before the election, was simply an estimate.

(*July* 16, 1923.)

PENNEWILL, C. J., HARRINGTON and RICHARDS, J. J., sitting.

*Robert G. Harman* for plaintiff.
*Philip L. Garrett* and *George W. Lilly* for defendant.

Superior Court for New Castle County, March Term, 1923.

Case stated, No. 111, January Term, 1923.

The following agreed statement of facts was submitted to the Court for its decision:

"First:  That an election was held in Claymont, Brandywine Hundred, County of New Castle and State of Delaware, for the purpose of fixing the amount to be raised for school purposes, for Claymont Special School District, on the 13th day of August A. D. 1921.

"Second:  That said election was held from 2 to 5 o'clock P. M., daylight saving time, on the 13th day of August, A. D. 1921.

"Third:  That the ballots used at said election had printed thereon only the words 'for additional tax' and 'against additional tax.'

"Fourth:  That the purpose for which said taxes were to be raised were alleged at the time of said election as follows:

| | |
|---|---:|
| Capital outlay | $ 7,431 |
| General control | 1,350 |
| Instructional service | 5,305 |
| Operation of plant | 1,580 |
| Auxiliary agencies | 1,300 |
| Contingencies | 2,000 |
| Delinquencies, cost of collection, etc | 2,107 |
| Total | $21,073 |

"Fifth: That the amount to be raised for school purposes alleged in the notice of said election was the sum of twenty thousand eight hundred sixty-three dollars ($20,863).

"Sixth: That the rate fixed by the said Board (at a Board meeting held August 1st, 1921) was 38c on every one hundred dollars, and that thereafter, to-wit, on December 5th, 1921, after the election was held on August 13th, 1921, the rate was changed by said Board to 28c on every one hundred dollars.

"Seventh: That the 10 per cent. added to the amount to be raised for school purposes, as set out in said notice, included delinquencies, costs of collection and 'etc.'

"Eighth: That after said rate was fixed, as changed, the said Board did levy a tax of 28c on every one hundred dollars, and did assess the property of the plaintiff, James C. McComb, at the sum of eighty-five thousand nine hundred dollars ($85,900), which said tax amounted to the sum of two hundred forty dollars and fifty-two cents ($240.52).

"Ninth: That afterwards a duplicate of said taxes was placed in the hands of William H. Dutton, the duly authorized and empowered Collector of Claymont Special School District Taxes, with a warrant thereto annexed authorizing and empowering him the said William H. Dutton, to collect said rates and taxes.

"Tenth: That afterwards the said William H. Dutton made demand on the said James C. McComb for the payment of said taxes, which demand was refused.

"Eleventh: That afterwards, to-wit, on the 26th day of June A. D. 1922, the said William H. Dutton, Collector of Claymont Special School District School Taxes brought suit in the Court of Common Pleas of New Castle County against the said James C. McComb for the collection of said taxes.

"Twelfth: That afterwards, to-wit, on the 20th day of December, A. D. 1922, judgment was entered in the court of Common Pleas in favor of the said William H. Dutton, Collector of Claymont Special School District School Taxes, and against the said James C. McComb, for the sum of two hundred forty dollars and fifty-two cents ($240.52), besides costs and collection fee, amounting to twenty-eight dollars and forty cents ($28.40).

"Thirteenth: That afterwards, to-wit, on the 20th day of December, A. D. 1922, an execution *fi fa* was issued on said judgment.

"Fourteenth: That afterwards, to-wit, on the 21st day of December A. D. 1922, the said James C. McComb, under protest, paid the said judgment, amounting to $240.52 and costs and collection fee amounting to $28.40.

"Fifteenth: That afterwards, to-wit, on the 29th day of December, A. D. 1922, the said James C. McComb, entered suit in this Honorable Court against the said William H. Dutton, Collector of Claymont's Special District School Taxes, for the recovery of the amount of said taxes and costs and collection fee so paid to the said William H. Dutton under protest as aforesaid.

"If the Court shall be of the opinion that the said taxes were illegally collected on account of any of the facts herein stated then judgment shall be rendered in favor of the said James C. McComb and against the said William H. Dutton, Collector of Claymont's Special District School Taxes, for the amount so paid by him under protest as aforesaid, and costs of suit.

"If the Court shall be of the opinion that the said James C. McComb had no cause of action or that the said taxes were legally collected, then judgment

shall be rendered in favor of the said William H. Dutton, Collector of Claymont's Special School District taxes and against the said James C. McComb for costs."

RICHARDS, J., delivering the opinion of the Court:

[1]    There is no doubt about the general principle of law re-·lied upon by plaintiff, that a statute conferring the power to tax must be followed strictly, but it also seems to be well settled that this principle should not be extended so far as to destroy the real intent and meaning of the statute; and that acts which, while not following the strict wording of the statute, simply amount to irregularities should not be allowed to defeat the real purpose of the legislative act or render proceedings undertaken thereunder illegal. *White v. Walsh*, 62 *Misc. Rep.* 423, 114 *N. Y. Supp.* 1015; *Irwin v. Lowe*, 89 *Ind.* 540; *School District v. Garvey*, 80 *Ky.* 159; *Hubbard vs. Brainard*, 35 *Conn.* 563; *State v. Troell* (*Tex. Civ. App.*), 207 *S. W.* 612.

In discussing the question of calling public meetings for the purpose of voting upon the levy of a tax, Mr. Cooley in his work on taxation says:

"In levying taxes, or in exercising any other function of government, the local community can only act under regular forms and according to customary legal regulations; and one of the conditions invariably is, that the power shall be exercised in an orderly manner, at a meeting assembled after due notice, and conducted according to legal forms, in order that there may be full opportunity for reflection, consultation and deliberation upon the important work to be done." *Cooley on Taxation* (2d *Ed.*) 334.

Discussing the question further on page 337 he also says:

"In voting the tax the people will be acting in their political capacity, and their action is to be favorably construed, and not to be over ruled or set aside by judicial or any other authority, so long as they keep within the limits of the power bestowed upon them.    Technical defects and irregularities should be overlooked so long as the substance of a good vote substantially appears, for the obvious reason that local business is largely and of necessity in the hands of plain people who are unskilled in the technicalities of law and unaccustomed to critical or even accurate use of language.   A strict construction of their doings would inevitably be mischievous, and would defeat the collection of the revenue in very many cases.    It will be found, therefore, that the courts sustain such action wherever sufficient appears to make plain the intent of the voters, provided the intent is warranted by the law."

[2]    The first exception is that the election was held between two and five o'clock P. M., Daylight Saving Time, whereas it

should have been held between two and five o'clock P. M. Standard Time.   The words of the statute are:

"The polls shall open at two o'clock in the afternoon and close at five o'clock in the afternoon."  *Vol.* 32, *Laws of Delaware*, 517.

Counsel for the plaintiff contends that this means Standard Time and that the election having been held from two to five Daylight Saving Time is illegal.  It is generally held that some time for holding elections must be designated, the object for which seems to be, we certainly can think of no other, to notify the persons entitled to vote so that they may not be deprived of the opportunity to do so.  Has it been claimed that any one entitled to vote at this election and who desired to cast his vote, was prevented from voting on account of the hours during which it was held?  In the case of *Clark v. Leathers*, 5 *S. W.* 576, 9 *Ky. Law Rep.* 558, an election was ordered to be held between the hours of seven A. M. and seven P. M., when the law provided that it should be held between the hours of six A. M. and seven P. M.; the Court held that such an informality did not render the election void.  In the case of *State v. Tolan*, 33 *N. J. Law* 195, an election for municipal officers was by mistake, and without objection held on the wrong day, there being no charge of fraud or corrupt motives, and the election being participated in by a large majority of the qualified voters of the city;  the Court held that in the exercise of its discretion it might properly refuse to allow an information in the nature of a writ of *quo warranto* against the defendant who was chosen as an alderman, to inquire by what authority he held and exercised his office.  In *Bordwell v. State*, 77 *Ark.* 161, 91 *S. W.* 555, an election was held at a courthouse, instead of at a livery stable near the courthouse, which was the place fixed by law;  the Court held this was not fatal to the election, as anyone going to the livery stable could see the crowd at the courthouse, and it did not appear that any one was misled.  The objection in the last case cited was as to the place of holding the election, but we think the principle applied by the Court in that case as well as in the first two cases cited, namely, whether the

change of time and place was misleading to the voters, is applicable to the case before us.

It seems clear to us that the provisions of a statute fixing the time of opening and closing the polls at an election are so far directory that an irregularity in this respect which does not deprive a legal voter of his vote, or admit a disqualified person to vote, will not vitiate the election. But if the departure from the provisions of the statute in regard to the time for opening or closing the polls was so great that it must be deemed to have affected the result, the election must be held invalid. *People v. Lodi High School*, 124 *Cal.* 694, 57 *Pac.* 660; *Fry v. Booth*, 19 *Ohio St.* 25; *Pickett v. Russell*, 42 *Fla.* 116, 634, 28 *South.* 764; *Patton v. Watkins*, 131 *Ala.* 387, 31 *South.* 93, 90 *Am. St. Rep.* 43; *People v. Cook*, 8 *N. Y.* 67, 59 *Am. Dec.* 451; *Holland v. Davies*, 36 *Ark.* 446; *Cleland v. Porter*, 74 *Ill.* 76, 24 *Am. Rep.* 273.

[3] The election in the case before us was held from two to five o'clock P. M., Daylight Saving Time; under such time the polls were opened and closed one hour earlier than they would have been under Standard Time; but should the election be held illegal and void because it was not held strictly in accordance with Standard Time? The statute under which the election was held provided that the polls should be kept open from two to five o'clock in the afternoon, but nothing is said about Standard Time or any other time; and there was no law of this state, at the time the election was held defining legal time or making Standard Time the lawful time.

It is not clearly shown in the case stated that Daylight Saving Time was the recognized and accepted time in the district where the election was held, although it was not denied at the argument. If Daylight Saving Time was the recognized and accepted time in the district, the time by which the people arose in the morning, conducted their daily affairs and retired at night, would there have been any better or more suitable time by which to hold the election? The election is presumed by law to be legal, and in order to rebut that presumption it must be shown that it was illegal. The mere fact that the election was held under Daylight Saving Time

does not, in our opinion, rebut the presumption. To have that effect it would have to appear that the time observed in opening and closing the polls was not the recognized and accepted time in the district.

[4] The second exception, "The purposes for which said taxes were to be used were not school purposes"; and the third exception, "The amount to be raised was set out as being $20,-862.00. The amount they showed they intended to raise was $21,-073.00," will be considered together.

The statute provides that notice shall be given for such election stating the amount to be raised and the purposes for raising the same. *Vol.* 32, *Delaware Laws, chap.* 160, *sec.* 54. The notice given in this case was as follows:

"Notice

"The Board of Education of the Claymont Special School District hereby gives notice that a special election will be held in this building on Saturday, August 13th, 1921, between the hours of two and five in the afternoon.

"At the election the qualified voters of the district will be asked to vote for or against an additional tax for school purposes upon the assessed value of real estate and personal property in the said district. The amount is $20,862 to be used as follows:

| | |
|---|---:|
| Capital Outlay | $ 7,431 |
| General Control | 1,350 |
| Instructional Service | 5,305 |
| Operation of Plant | 1,580 |
| Auxiliary Agencies | 1,300 |
| Contingencies | 2,000 |
| Delinquencies, cost of collection, etc | 2,107 |
| Total | $21,073 |

"This will mean a tax of 38c on every $100 of assessed valuation.

"At this election every person qualified to vote at the school election in the district shall be qualified to vote.

"Board of Education Claymont Special School District,

"W. G. Robelen, Pres.

"J. Fred Parsons, Sec'y."

[5] This notice expressly states the additional tax is for school purposes, the amount of which is $20,862. It is true that the notice attempted to show the manner in which the money was to be used by an itemized statement, but we do not think this is

required by the statute, if it were required it would be impossible to specify each item for which the money was to be used, and we think it would be sufficient to state it in general terms as was done in this case. As a matter of fact, the statement contained in this notice follows very closely the Official School Budget provided for in *Chap.* 14 of *Vol.* 32 of the *Laws of Delaware*, and it may be that the parties who prepared the notice were using it as a guide, which would not be unreasonable. It is further contended that even if the election was not void the plaintiff was not legally bound to pay the tax levied against him, because the school board could not levy a greater tax than the amount stated in the notice of election.

As a general proposition this contention is correct and it is not denied, but it is denied that the tax levied is greater than the amount stated in the notice.

The amount stated in the notice to be raised for school purposes, namely, $20,862, was the amount which the taxables voted for and consequently the amount the school board was authorized to raise. The statute above referred to further provides that the board shall fix the rate sufficient to raise the amount determined to be raised at the election with an additional ten per cent. for delinquencies and costs of collection. The amount desired to be raised for school purposes as stated in the notice was $20,862; ten per cent. of that amount, which additional sum the board was authorized to raise, is $2,086; therefore, the total sum that the board was entitled to raise was $22,948. The additional ten per cent. is no part of the sum voted on, but is arbitrarily fixed by the statute and to be added to the sum voted on. Although it appears in the notice, it was not properly there, it simply amounted to surplusage, and could not be considered in determining whether the amount sought to be raised was greater than the amount the notice stated was to be raised. In the notice of the election, it was plainly stated that the additional tax the voters would be asked to vote for was $20,862, and it is immaterial that in setting out the purposes for which it was to be used the aggregate amount ex-

ceeded that sum, because in said aggregate amount was improperly included the additional ten per cent.

It does not appear whether the taxes levied were $20,862 or $21,073. Presumably it was the latter amount, which improperly includes the additional ten per cent.; in either case the levy was for a less amount than the board was authorized to raise, namely, $22,948.

The substance of the fourth, fifth and sixth exceptions was dealt with in our consideration of the second and third exceptions, and we do not think it necessary to consider them further.

[6]  The seventh exception is that "the assessment was not made in accordance with the time fixed by law."

The only place in the statute where the making of an assessment is referred to, is paragraph five of section 54, which provides as follows:

"The Board of School Trustees or the Board of Education of a Special School District in which the tax is to be levied shall cause to be made from the assessment records of the county in which the district is located, a list of all the taxables of the district, showing the property assessed against such taxables and the assessment of such property."

At no place in the statute is any specific time designated for making the assessment, nor is it shown by the case stated when it was made in this case. It might be inferred that it was to be made after the election from the fact that the paragraph providing for the assessment appears after the paragraph providing for the election, but we are not called upon to make such an inference. The assessment is presumed to have been lawfully made, and in the absence of anything to the contrary we can see no reason for holding otherwise.

[7]  The eighth exception, that, "the rate fixed was not made at the time prescribed by law"; and the ninth execption, that, "when the rate was fixed at thirty-eight cents, whether lawfully made or not, the power of those making said rate was exhausted," will be considered together.

The first rate fixed seems to have been thirty-eight cents; just when this rate was fixed we are unable to say; it first appeared in the notice of the election and consequently must have been

fixed about that time. It not only was not required to be in the notice, but was improperly there. This we think, however, had no effect upon the election held thereunder. ·

This rate appearing in the notice for the election was certainly fixed before the election and the fair inference being, in the absence of proof to the contrary, that the assessment was made after the election, the fixing of this rate was simply an estimate, and so far as having any effect upon the power of the board to subsequently fix a rate was a nullity. The statute provides that—

"Upon the completion of the assessment, the Board shall fix the rate sufficient to raise the amount determined to be raised at that time." 32 *Del. Laws*, *c.* 160, § 54.

The election was held on August 13, 1921, and on December 5, 1921, the rate of twenty-eight cents, being the rate upon which the tax was computed and levied, was fixed.

This was after the election had been held and the result determined, and the Board had been authorized to raise the additional tax. Certainly it must have been made after the assessment, as there is nothing in the case stated, nor was anything brought out at the argument to indicate that the assessment was made before the election, and as said before, the fair inference from the statute is, that it was required to be made after the election. Before the assessment was made there was nothing by which to determine the rate which would be required to raise the desired amount of tax; therefore, how could any permanent rate have been fixed before the assessment was made?

We are of the opinion that the taxes in the case in question were legally collected and that James C. McComb has no cause of action. Judgment will, therefore, be entered in favor of the said William H. Dutton, Collector of Claymont's Special School District Taxes and against the said James C. McComb for costs.