WAIT *v.* HALL, SECRETARY OF STATE.

4-5196

Opinion delivered July 11, 1938.

*House, Moses & Holmes* and *Eugene R. Warren,* for petitioner.

*Jack Holt,* Attorney General, *Lee Cazort* and *Lee Cazort, Jr.,* for respondent.

SMITH, J. Appellant, a resident, citizen and taxpayer of this state, alleged, as his cause of action, the following facts.

The General Assembly, at its regular, 1937, session, passed an act No. 287, Acts 1937, p. 1025. The act was approved by the Governor March 22, 1937, and contained the emergency clause, which, if effective, would have made the act operative and in full force from and after its passage and approval. The legislative journals show, however, that the emergency clause did not receive the vote required by the Initiative & Referendum Amendment to the Constitution to make it effective upon its passage and approval. The General Assembly adjourned *sine die* March 11, 1937, and the act did not, therefore, become effective until 90 days thereafter, or until June 9, 1937.

Petitions containing the names of 14,383 signers were filed June 6, 1937, with the Secretary of State, praying a referendum of act 287. On September 28, 1937, appellant and other citizens of the state filed a protest against the petitions, upon the ground that many of the signers of the petitions were not qualified electors and, therefore, were not entitled to sign the petitions.

On October 13, 1937, the Secretary of State advised the sponsors that their petitions lacked 1,242 names of having the requisite number of qualified signers. On November 12, 1937, additional petitions containing the names of 1,944 signers were filed with the Secretary of State. On November 24, 1937, appellant and other citizens filed a protest upon the ground that 864 of the additional signers were not qualified electors. On February 25, 1938, the Secretary of State notified the sponsors of the petitions that the original and additional petitions lacked 162 signers of supplying the requisite number of qualified electors, but he also advised that other additional petitions might be filed within thirty days after February 25, 1938, and that he would accept the filing of the additional petitions within that time. Appellant seeks by this suit to enjoin the Secretary of State from accepting and filing these additional petitions.

It was further alleged that at the last preceding general election a total vote of 184,460 votes were polled for Governor, and that 6 per cent. of this number, or 11,068 qualified electors, were essential to order the referendum. Unless additional petitions are filed pursuant to this second extension of time from and after February 25, 1938, a sufficient number of electors have not signed the referendum petitions. The petitons now on file lack 162 names of containing the requisite number of qualified electors. It was prayed that the Secretary of State be enjoined from accepting additional petitions, and the Secretary of State has filed a demurrer to this complaint.

This is an original proceeding, brought under the sub-section of the portion of the I. & R. Amendment entitled "The Petition," which reads as follows: "The sufficiency of all state-wide petitions shall be decided in

the first instance by the Secretary of State, subject to review by the Supreme Court of the state, which shall have original and exclusive jurisdiction over all such causes."

The I. & R. Amendment reserves to the people of the state ". . . the power to propose legislative measures, laws and amendments to the Constitution, and to enact or reject the same at the polls independent of the General Assembly; and also reserve the power, at their own option, to approve or reject at the polls any entire act or any item of an appropriation bill."

This right of referendum may be exercised by ". . . any number not less than six per cent. of the legal voters," who "may, by petition, order the referendum against any general act, or any item of an appropriation bill, or measure passed by the General Assembly, . . . ."

The amendment further provides that "Such petition shall be filed with the Secretary of State not later than ninety days after the final adjournment of the session at which such act was passed, except when a recess or adjournment shall be taken temporarily for a longer period than ninety days, in which case such petition shall be filed not later than ninety days after such recess or temporary adjournment."

The provision just quoted authorizes petitions for a referendum to be filed not later than ninety days after the final adjournment of the session at which the act sought to be referred was passed. The exception relating to adjourned sessions has no application here, as the 1937 session adjourned *sine die* March 11, 1937. The session which convened March 10, 1938, and which adjourned March 26, 1938, was an extra session convened pursuant to the proclamation of the Governor calling the General Assembly into an extraordinary session. That session, of course, has no bearing upon the question here under consideration.

The amendment further provides that "The total number of votes cast for the office of Governor in the last preceding general election shall be the basis upon which

the number of signatures of legal voters upon statewide initiative and referendum petitions shall be computed.''

The amendment further provides: ''Emergency— If it shall be necessary for the preservation of the public peace, health and safety that a measure shall become effective without delay, such necessity shall be stated in one section, and if upon a yea and nay vote two-thirds of all the members elected to each house, . . . , shall vote upon a separate roll call in favor of the measure going into immediate operation, such emergency measure shall become effective without delay. It shall be necessary, however, to state the fact which constitutes such emergency. Provided, however, that an emergency shall not be declared on any franchise or special privilege or act creating any vested right or interest or alienating any property of the state. If a referendum is filed against any emergency measure such measure shall be a law until it is voted upon by the people, and if it is then rejected by a majority of the electors voting thereon, it shall be thereby repealed.''

It thus appears that by the enactment of an emergency clause, in the manner stated, the General Assembly may make an act effective upon its passage and approval by the Governor; but it may be rejected by a majority of the electors voting thereon at the next ensuing general election, in which event the act is repealed. But if no emergency clause is enacted the act does not become effective until ninety days after the adjournment of the session at which it was passed. During the ninety days six per cent. of the number of electors voting for Governor at the preceding general election may, by petition, order a referendum; in which event the act does not become effective as a law, unless and until there shall have been an affirmative vote at the ensuing general election.

The population of the state, as shown by the 1930 federal census, was 1,854,482. The total vote for Governor at the last general election was 184,460.

It is possible, therefore, for slightly more than one-half of one per cent. of the population of the state to arrest legislation and to hold it in abeyance until the next

general election, unless the act has been passed with the emergency clause attached. This may be done by merely filing the petition for its reference as provided by the amendment, and it is further provided in the amendment that no limitation shall be placed upon the number of acts which may be initiated or referred.

Petitions to refer an act passed by the General Assembly are filed with the Secretary of State, and if that official "shall decide any petition to be insufficient, he shall without delay notify the sponsors of such petition, and permit at least thirty days from the date of such notification, . . . , for correction or amendment."

Here, petitions for referendum were filed within ninety days after the final adjournment of the General Assembly. But these petitions were insufficient for the reason that they did not contain the requisite number of qualified signers, whereupon the Secretary of State granted the sponsors additional time to file other petitions. These were filed, but it was again ascertained by the Secretary of State that the petitions were insufficient, whereupon the Secretary of State granted additional time for filing other petitions, the last extension being for a period of thirty days after February 25, 1938. This proceeding questions his right to do so.

In the decision of this question only one case bearing upon it has been called to our attention, and our own somewhat extensive investigation has discovered no other case, although the case of *Phillips* v. *Rothrock,* 194 Ark. 945, 110 S. W. 2d 26, which dealt with the initiative rather than the right of referendum, announces principles which we think are applicable here.

We think the Secretary of State has exceeded his powers under the amendment in granting the second extension of time, and we have reached this conclusion for the following reasons.

Legislation without an emergency clause does not become effective until the electors have had an opportunity to exercise their right to have it referred; but this time is limited to a period of ninety days after the adjournment of the General Assembly, with the proviso

that, if the petitions, which must be filed within ninety days after the adjournment of the legislative session which passed the act, are found to be insufficient by the Secretary of State, with which officer they are required to be filed, that officer shall, without delay, notify the sponsors of such petitions and permit at least thirty days from the date of such notification ". . . for correction or amendment." Assuming—without deciding—that this right to correct and amend includes the right to file additional petitions, it is, nevertheless, a right which must be exercised within thirty days after the sponsors have been notified by the Secretary of State that the petitions have been found insufficient. No authority is conferred for any additional extension, and the right to amend and correct must be exercised within the time limited for that purpose.

Is it within the power of the Secretary of State to extend this period and to suspend the effectiveness of legislation for a longer period of time than ninety days, plus the additional thirty days for correction and amendment, after the adjournment of the General Assembly? If it is, he may, by repeated extensions of time, each for not less than thirty days, suspend legislation indefinitely, and thus nullify legislation duly enacted until it shall have been voted upon by the people.

The facts in the instant case illustrate what would be the consequence of holding that the Secretary of State has this power. The act was approved March 22, 1937. The extension of thirty days from February 25, 1938, which the Secretary of State has allowed, expired March 27, 1938, which date is more than a year subsequent to the passage of the act.

It was certainly not contemplated that there should be any question as to when legislation becomes effective; nor was it contemplated that legislation should be in effect for a time, and then cease to be in effect, as would be the case upon a failure to file sufficient petitions within the ninety days, plus the additional thirty days for correction and amendment, if the Secretary of State has power to enlarge that time. An act without the emer-

gency clause is effective if petitions for a referendum are not filed within the time allowed for that purpose. The amendment so expressly provides. Can it then be possible that after having gone into effect an act may later cease to be effective; that the act may be a law for a time and then cease to be a law before its rejection by the people at the ensuing general election? We do not think so. This power is too great to be trifled with, and we think it was not contemplated that slightly more than one-half of one per cent. of the population of the state should have this power, even with the assistance of the Secretary of State.

We think it more consonant with the practical operation of the government of the state, and the enforcement of its laws, and the execution of its policies as declared by the General Assembly, as well as by the language of the amendment above quoted, to hold that the right of referendum must be exercised within the ninety days allowed for that purpose, plus the additional thirty days allowed for correction and amendment. It is contemplated that proper and sufficient petitions shall be filed with the Secretary of State when an attempt to exercise the right of referendum is made. If, however, it is found that the petitions are insufficient, the Secretary of State may allow not less than thirty days to make them sufficient, and if not made sufficient within that time the act becomes a law under the provisions of the amendment.

The amendment does not require petitioners to delay the circulation of petitions until after the General Assembly has adjourned; it only requires that they be filed within ninety days after the adjournment of the General Assembly. Petitioners may begin the circulation of petitions as soon as the act sought to be referred has been approved by the Governor, and in some instances it is quite possible to have petitions ready for filing by the time the General Assembly adjourns. If the petitions, when filed, are found, insufficient, the Secretary of State shall so notify the sponsors, and he shall permit at least thirty days for correction or amendment after the date of such notification, and the time limit may not be further enlarged.

As has been said, we have been cited to—and have found—only one case touching the question here under consideration, and that is the case of *Spahr* v. *Brown, Secretary of State,* 19 Ohio Appellate Reports 107. This case construed § 1b, art. 2 of the Constitution of the state of Ohio, which relates to and provides the manner of exercising the right of initiative and referendum. It was there said: "Upon the first question, it may be observed that the ninety-day provision is a constitutional limitation binding alike upon the parties interested in the bill and the Secretary of State. The ninety-day limitation is a jurisdictional provision, and if the proponents of the bill did not comply with this provision jurisdiction is lost, and no action by the Secretary of State can confer jurisdiction as against the limitation expressly provided for in the Constitution. It is undoubtedly true that referendum provisions shall be liberally construed by the courts, and in matters wherein there is no express limitation the action of the Secretary of State would not be questioned by the courts, unless it should be found that there was an abuse of discretion. If it should clearly appear that the supplementary petition was not filed within ninety days after the rejection of the bill by the house, the courts will review the action of the Secretary of State and enjoin proceedings under the referendum."

It may be conceded that the provisions of the Ohio Constitution are not identical with the provisions of our Constitution on this subject. But that case is authority for holding that filing of petitions within the time limited for that purpose is jurisdictional, and that they may not be filed after the expiration of that time. *Phillips* v. *Rothrock, supra.*

So, here, we think ninety days after the adjournment of the session at which an act was passed is the full limit of time allowed for that purpose, and the Secretary of State is without power to grant additional extensions of time, except that he may allow thirty days for correction and amendment.

Here it is alleged that the petitions were not made sufficient within the additional time of thirty days al-

lowed for that purpose, and the Secretary of State has exhausted the only power conferred upon him to grant any extension.

It follows, therefore, that he should be enjoined from granting an additional extension beyond the thirty days covered by the first extension of time, and it is so ordered.