RAILEY v. CITY OF MAGNOLIA.

4-5493　　　　　　　　　　　　　　　126 S. W. 2d 273

Opinion delivered March 20, 1939.

*Walter L. Brown* and *Whitley & Utley*, for appellant. *Edwin B. Keith, McKay, McKay & Anderson* and *Wade Beene*, for appellees.

SMITH, J. The court below dismissed as being without equity the suit of appellant, a citizen and taxpayer of the city of Magnolia, in which he sought to enjoin the officials of that city from proceeding, under Ordinance 244 of that city, which ordinance, if valid, authorized an election upon the question of the construction of a municipal hospital.

This appeal is from that decree, and appellant, the plaintiff below, questions first the action of this court in advancing the cause for submission. The cause affects the public interest, and it has always been the policy of this court to advance such causes for submission.

The second point made is that the ordinance was passed August 23, 1938, and the election which it provided for, to determine whether the city should issue bonds, pursuant to the provisions of the Amendment No.

13 to the Constitution, to erect a hospital, was held September 26, 1938, thus defeating the right to have the ordinance itself referred to the electorate of the city for approval or rejection.

The ordinance does not authorize the issuance of bonds. It provides that an election shall be held, at which time the electors shall vote upon that question, and requires the affirmative vote of the electors to confer that authority.

The authority to issue bonds for certain designated purposes, and, among others, the erection and equipment of hospitals, conferred by Amendment No. 13, is conditioned upon the submission of that question to the electors of the city, and an affirmative vote upon the subject. The question must be referred to and be approved by the electors before the power may be exercised, so that the election is, itself, a referendum. *Campbell* v. *City of Eugene,* 116 Ore. 264, 240 Pac. 418. But it is not essential to the decision of this case to hold that there was no right to have the ordinance authorizing the election to be referred, and we may treat that question as being reserved without changing the conclusion which must be reached.

Amendment No. 7, commonly referred to as the I. & R. Amendment, provides that "Municipalities may provide for the exercise of the Initiative and Referendum as to their local legislation." Pursuant to this power there was passed, in 1927, an Ordinance No. 167, by the city of Magnolia, which limits the time for filing a referendum petition to thirty days after the passage of any ordinance, and no attempt was made to exercise this power within thirty days after the passage of the ordinance, or at any other time. In view of the fact that only ninety days is allowed after the adjournment of the General Assembly in which to file petitions for referendum on a law statewide in its operation, we cannot say that thirty days is too short a time in which to petition for a referendum on a city ordinance.

The testimony shows very clearly that when Ordinance No. 244 was passed it contained the emergency clause declaring that the ordinance should be in force and effect from and after the date of its passage. It is true

the emergency clause did not defeat the right to have a referendum on the ordinance, but the emergency clause did have the effect of making the ordinance effective from and after its passage, subject, of course, to the right of the electors of the city to reject it, had they exercised their right of referendum within the time and manner allowed by Ordinance 167 for that purpose, which was not done. Ordinance No. 244, therefore, authorized the holding of the election on the day on which it was held. *Wait* v. *Hall*, 196 Ark. 508, 118 S. W. 2d 853.

It is insisted that the election was not held at the usual voting places, as the ordinance required. There are three wards in the city of Magnolia, and two voting places in Ward No. 1. The elections do not appear to have always been held at the same place in one of the precincts in Ward No. 1. There were three such places where elections had been held at one time or another, but all were within a block of each other. The last preceding election in one of the precincts of Ward No. 1 had been held at an office across the street from the Western Union Telegraph Company's office, but the election here in question was held in the Telegraph Company's office, and the witness by whom the showing was made that the place of the election had been changed admitted that he had no difficulty in locating the place where the election was in progress. In Ward No. 2 the usual place of holding the elections was in the main court room in the courthouse. The election in question was held in another room on the same floor of the courthouse, only twelve feet away.

The election in Ward No. 3 was usually held in the rear of the Farmers' Bank & Trust Company building. A notice was posted on the door of the room where the elections were usually held in that ward advising that the election was being held in the City Hall, a block away, and the witness who testified as to this change of place admitted that he had no trouble in finding the place where the election was in progress. There appears to have been no attempt to deceive or prevent any voter from exercising his right of suffrage by misleading or confusing him as to the place of the election. The changes in the places were unimportant.

The case of *Rural-Dale Consolidated School District No. 64* v. *Carden,* 178 Ark. 257, 10 S. W. 2d 253, involved the validity of a school election which had been held at a place other than that designated by the school directors in the notice of election. In holding that this circumstance did not invalidate the election we quoted from the case of *Bordwell* v. *State,* 77 Ark. 161, 91 S. W. 555, as follows: " 'Election was not void because, instead of being held at the place lawfully fixed for that purpose, it was held at another place near at hand, if persons attending the latter place could be seen from the former place, and it did not appear that any one was misled.' "

It is insisted that the election was ineffective as it was held for the purpose only of determining whether a hospital should be erected, and the ordinance made no reference to its equipment. We think, however, that authority to erect a hospital would imply authority to equip it. A naked building would not be a hospital. It would require the essential equipment to make it such, and authorization to erect a hospital would import authority to equip it.

It is insisted that the election was ineffective because no definite millage of taxation was voted. But the Amendment No. 13 imposes a limitation upon the tax which may be levied (except for waterworks and light plants) not exceeding five mills. The affirmative vote in this case does not, of course, authorize a levy of not exceeding five mills to erect a hospital and five mills additional to equip it. The building and equipping of a hospital is a single enterprise, and the levy to pay for both cannot exceed five mills. *Watkins* v. *Duke,* 190 Ark. 975, 82 S. W. 2d 248. The amendment does not require that the ordinance shall state the millage to be levied, but it does limit the amount which may be voted, and there is no showing of any attempt to exceed this limit.

The title of Ordinance No. 244 reads as follows: "An ordinance submitting to the voters of the city of Magnolia the question whether it will issue bonds not exceeding $33,000 for the purpose of building a city hospital." It is argued that the city now proposes to issue bonds in the sum of $39,000 to erect the hospital, and that there

is no authority for this action. The ordinance provides, however, that the election is "for the purpose of determining whether the city of Magnolia will issue $33,000 in negotiable bonds, bearing interest at the rate of six per cent. per annum, but convertible to a lower rate of interest on such terms as the city shall pay and receive substantially the same amount of money as upon the six per cent. bond sold at not less than par."

The testimony shows that under the contract for the sale of the bonds the city will receive $39,000 for $39,000 in four per cent. bonds, and that to mature those bonds the city will be required to pay only the sum of $56,980, as against the sum of $58,160 which it would be required to pay on a $33,000 issue of six per cent. bonds, thus effecting a saving to the city of $1,180. This action, not only does not violate the provisions of the ordinance, but is expressly authorized.

It is finally insisted that notice of the election was not given by the mayor by advertisement weekly for at least four weeks in some newspaper published in said municipality, as required by Amendment No. 13. In answer to this objection, it may be said that appellant raised no such objection in the complaint filed by him, nor was any testimony offered upon that subject. That question cannot be raised here for the first time without allegation or testimony to sustain it. We must presume that had the objection been raised that no notice of the election was given, the testimony would have shown to the contrary. At any rate, we cannot enjoin the city from proceeding with the erection of the hospital upon a ground neither alleged nor proved.

Certain other questions are discussed in the briefs which we think are not of sufficient importance to require discussion. We conclude, therefore, that the objections urged to the ordinance are not sustained, and that the court below did not err in dismissing the complaint as being without equity. The decree so ordering is, therefore, affirmed.