ROSCOE *v.* WATER AND SEWER IMPROVEMENT DISTRICT No. 1.

4-9100                                    224 S. W. 2d 356

Opinion delivered November 21, 1949.

*McMath, Whittington, Leatherman* and *Schoenfeld,* for appellant.

*Wood & Chesnutt,* for appellee.

GRIFFIN SMITH, Chief Justice. Appellant is a property-owning taxpayer residing within Water and Sewer Improvement District No. 3 of Garland County. He sought in a class suit against the District's Commissioners and others to prevent a sale of bonds, alleging (a) that Act 41 of 1941 restricts the issuance of notes · or bonds to costs arising from preliminary work, as distinguished from substantive construction, and (b) that the pledge executed by the District attempts to delegate powers that can be legally performed by the Commissioners only. The Chancellor dismissed the complaint for want of equity.

The proposed · improvements, lying partly within and partly beyond the Hot Springs city limits, would be made at a cost of $105,000 with money supplied by Reconstruction Finance Corporation. The 4% bonds would be secured by pledge of betterments aggregating $215,630, such betterments to draw 6% interest. Serial bonds over a period of twenty years are authorized if the proceedings are valid.

*First—Scope of Act 41.*—Ends sought to be achieved by the enactment of 1941 are discussed in *Murphy* v. *Cook,* 202 Ark. 1069, 155 S. W. 2d 330. The Act appears as Ch. 7. "Suburban Improvement Districts", in Ark. Stats., §§ 20-701 to 729, inclusive. Section 16 of the Act reads:

"In order to meet preliminary expenses to do the work the board may issue the negotiable notes or bonds of the district". Appellees insist, and the trial Court found, that the legislative intent was to provide means "to meet preliminary expenses *and* to do the work". We agree that the omission of "and" was a clerical misprision. The Act contains 28 sections, not counting the emergency clause, and when considered in the light of purposes expressed in the related parts, the conclusion is inescapable that the lawmakers were dealing with a general or "over-all" plan respecting the subject-matter, and there was no thought of implementing preliminary work by exclusive treatment, thereby requiring separate

proceedings to be independently pursued before the primary objective could be attained.

The title of an Act is in no sense controlling, and, like a preamble, or emergency clause, it may be looked to for the purpose of ascertaining a meaning not fully expressed in the Act proper, yet—as we have so often said[1]—where there is doubt as to the legislative intent, due either to ambiguous phrases or a suggested word omission, and where the missing word can be appropriately supplied by determining from the title, preamble, or other collateral phrases just what the lawmakers intended to accomplish, it is then proper to consider any or all of these collateral aids.

Tested by this rule, we find that Act 41 was designed to provide "for the formation of suburban improvement districts, for . . . the building and extending water systems, [and] building and extending gas pipe lines"; [and—by the preamble] "Whereas, . . . persons residing outside cities and towns are not permitted [under existing statutes] to form [suburban improvement districts of the kind here at issue] and are thus prohibited from [receiving] benefits of funds from the Government of the United States, [therefore] it is declared to be the purpose of this Act to make provision for formation of improvement districts on the outside of and adjacent to cities having a population of 5,000 or more".

As an indication of the legislative concept that actual improvements should be made under authority of Act 41, the right is given by § 4 "to sell or lease the improvement" made by the Commissioners, etc. Section 5 mentions "assessed value of lands after the improvement is made"; section 11 authorizes further levies of benefits "if the tax first levied shall prove insufficient to pay the bonds, both principal and interest,

---

[1] *Western Union Telegraph Company* v. *State,* 82 Ark. 302, 101 S. W. 745; *Roachell* v. *Gates,* 185 Ark. 350, 47 S. W. 2d 35; *State ex rel. Attorney General* v. *Chicago Mill & Lumber Corporation,* 184 Ark. 1011, 45 S. W. 2d 26; *Cherry* v. *Leonard,* 189 Ark. 869, 75 S. W. 2d 401. These are but a few of the cases holding that Courts have power to find, from affirmative language of an Act and collateral matters essentially affecting it, that a specific purpose existed.

issued by the board of commissioners on account of such improvement, as hereinafter provided''; § 14 requires all contractors ''to give bond for the faithful performance of such contracts as may be awarded them'', and permits the commissioners to sell ''all unnecessary material and implements that may be on hand and which may not be necessary for the completion of the improvement under way, or which may have been completed''. Section 15 imposes a duty on the board to have the amount of work done by any contractor estimated from time to time . . . by its engineer, ''and the board shall draw its warrants in favor of the contractor for not more than 90% of the amount of work so reported, reserving the remainder until it has been ascertained that the work is completed according to the contract and is free from liens.'' Then follows § 16, relating to preliminary expenses—the matter from which ''and'' is omitted. The second sentence of § 16 authorizes the board to *also* issue to the contractors who do the work negotiable evidences of debt, bearing interest at not exceeding six percent, but ''no bonds, under the terms of this Act, shall run for more than thirty years''; and (§ 18) ''The district shall not cease to exist upon the completion of the improvement, but it shall continue for the purpose of . . . keeping it in repairs''. Section 22 provides for payment of preliminary expenses ''if for any reason the improvement contemplated by any district organized under this Act is not made''.

The history of Act 126 of 1923 and an amendment of 1927 is to be found in the opinion written by Chief Justice JOHNSON, June 11, 1934. *Texarkana-Forrest Park Paving, Water, Sewer, & Gas District No. 1* v. *State [for the use of] Miller County,* 189 Ark. 617, 74 S. W. 2d 784. The decision was by a divided Court, and it is suggested by counsel for appellee here that the legislative purpose, when Act 41 of 1941 received consideration, was to create a remedy replacing the 1923 enactment; hence its essentials were in all respect copied, but in a manner avoiding the vice pointed to in the Miller County case. This is stressed in the *Murphy-Cook* opinion through the statement of Mr. Justice

HUMPHREYS, who said that "Act 41 of the Acts of 1941 is fashioned after and is almost an exact copy of Act 126 of the Acts of 1923 in all important particulars".

Inclusion of *and* in the questioned sentence is necessary if the Act is to be the instrumentality for carrying into effect the essentials so frequently mentioned in the several sections. Result must be the same whether rules of interpretation, or of construction, are invoked. See Cooley's Constitutional Limitations, 8th Ed., ch. 4.

*Second—Delegation of Power.*—Appellant contends that certain language in the Board's resolutions and pledge delegates authority to the trustee not authorized by Act 41. The objection is anticipatory. Assuming, for the purpose of discussion, that expressions in the documents confer authority, *prima facie,* not expressly authorized by the Act, we must not assume that if the contingencies arose, the actual procedure would be contrary to statutory authorization. All rights of the bondholders, upon the one hand, and property-owners and the district upon the other, are safeguarded by the Act, and there is no legal presumption that, in the enforcement of rights, authority of the statute will be abandoned in favor of contractual treatment materially in conflict with Act 41.

Affirmed.