John Oather CASTEEL, et al. *v.* W.J. "Bill" McCUEN,
Secretary of State, and Arkansas State Board of Election
Commissioners

92-925                                          838 S.W.2d 364

Supreme Court of Arkansas
Opinion delivered October 9, 1992

*James F. Lane*, for petitioners.

*Winston Bryant*, Att'y Gen., by: *Frank J. Wills, III*, Asst. Att'y Gen., for respondents.

TOM GLAZE, Justice. Petitioners bring this mandamus action against W. J. "Bill" McCuen, as Secretary of State, asking that McCuen certify to the seventy-five county boards of election commissioners the petitioners' initiative constitutional amend-

ment captioned the "Tax Referendum Amendment," so the respective boards can place this issue on the November 3, 1992 General Election ballot. Petitioners timely filed their initiative petitions with the Secretary of State's office, but that office ultimately determined the petitions failed to contain the requisite number of signatures — 69,641 signatures were needed to initiate the amendment, but McCuen's office counted only 68,435. All parties agree that, for the petitions to qualify as an initiative measure under Ark. Const. amend. 7, the petitions must, prima facie, contain at the time of filing the required number of signatures. *Czech, City Clerk* v. *Munson, Chancellor,* 280 Ark. 219, 656 S.W.2d 696 (1983); *Dixon* v. *Hall, Secretary of State,* 210 Ark. 891, 198 S.W.2d 1002 (1946).

■■ Petitioners question McCuen's count, claiming they filed petitions containing more than the required number of signatures. As a consequence, the only dispute between the parties in this action is a factual one. Consequently, we appointed a master, Judge Tom F. Digby, under ARCP Rule 53, and directed that he take evidence on this factual issue and file his findings of fact with the court.[1] The master has now submitted his findings. In so doing, the master found that the petitioners failed to show by a preponderance of the evidence that they had filed the number of signatures to give legal effect to their petitions. The sole issue before us now is whether the master's findings of fact are clearly erroneous. ARCP Rule 53(e)(2). A finding is clearly erroneous when, although there is evidence to support it, the court, on the entire evidence is left with the definite and firm conviction that a mistake has been made by the master. *See* Reporter's Note to Rule 53.

Petitioners readily concede the evidence they presented failed to meet their burden of proving they had submitted the required number of signatures. They contend, however, their burden of proof was met when considering the respondents' added testimony given by two Secretary of State employees, John Fincher and Jim Werner. Mr. Fincher testified that one of the counters, Amy Finnegan, had stopped counting signatures when 55,000 signatures were found, thinking the required or threshold

---

[1] Both parties submitted Judge Digby as one they would recommend as a master.

number to certify the initiated measure had been met. Fincher subsequently informed Finnegan the required number was 69,641, so Finnegan continued her counting of signatures, which she then claimed totaled 71,060. It was later determined that Finnegan had made an error in counting the Garland County signatures, which required a deduction of 1,800, thereby reducing the total to 69,260, or below the 69,641 threshold amount.

■ However, petitioners rely on a snippet of Fincher's testimony on cross-examination, indicating that when Finnegan had first stopped counting signatures when 55,000 were found, this number did not include more than 18,000 signatures on Pulaski County petitions. That being true, petitioners say the total signatures actually exceeded 71,000, after excluding the 1,800 error made by Finnegan. Werner, however, testified after Fincher and stated only 51,000, not 55,000, signatures were counted on petitions circulated outside of Pulaski County. Thus, including the 18,000 signatures in Pulaski county, Werner said that he and other employees found only a total of 69,000 signatures. Fincher's earlier testimony on direct examination matched Werner's conclusion that 69,000 signatures had been counted and that this final total was inflated by the 1,800 signatures error made by Finnegan. The master, in weighing this testimony alone, could reasonably find, as he obviously did, that the total signatures on petitioners' petitions fell well under the 69,641 threshold number.

In reviewing the entire record, it is clear the petitioners, themselves, were unsure of how many signatures their group had obtained and how many petitions they had filed with the Secretary of State's office. Petitioner John Casteel testified that he and others counted signatures three times immediately before filing them with the Secretary of State, and each time, they came up with three different numbers — 65,000, 70,000 and around 66,500. Obviously, two of petitioners' own counts fell short of the 69,641 amount needed to give their petitions legal effect. Casteel admitted that confusion existed in his group's count of signatures, but said they decided they had 69,790 signatures when filing their petitions. He again conceded that each time the petitions were counted, petitioners would come up with a different number.

Petitioners also offered testimony that some petitions they

had filed with the Secretary of State's office were now missing. McCuen and his employees countered this charge by explaining how the petitions had been secured and how impossible or improbable it was for any petitions to have been lost, taken or otherwise omitted. Petitioners do not now argue this point in their brief, but we mention it in passing only to demonstrate this factual dispute was thoroughly presented to the master, and the master, in observing the witnesses and their demeanor, resolved this factual issue in favor of the respondents.

Based upon the record before us, we are unable to say the master's findings are clearly erroneous. Thus, because the petitioners failed to present the required number of signatures to give legal effect to their proposed initiative amendment, we are compelled to deny their request for writ of mandamus.