Sherry WALKER, Individually and as Chair of
the Committee to Preserve the Medicaid Trust Fund,
and on Behalf of All Others Similarly Situated
*v.* W.J. "Bill" McCUEN, in his Official Capacity
as Secretary of State of the State of Arkansas

John Bland, as Chairman of Citizens Against
Unfair Taxes, *Intervenor*

94-1149                                            886 S.W.2d 577

Supreme Court of Arkansas
Opinion delivered November 3, 1994

*Wilson, Engstrom, Corum & Coulter*, by: *Stephen Engstrom*; and *John Pagan*, for petitioner.

*Winston Bryant*, Att'y Gen., by: *Tim Humphries*, Deputy Att'y Gen., for respondent.

DONALD L. CORBIN, Justice. Petitioner, Sherry Walker, individually and as chair of the group known as The Committee To Preserve The Medicaid Trust Fund, and on behalf of all others similarly situated, filed this original action pursuant to Amendment 7 to the Arkansas Constitution, against respondent, W.J. "Bill" McCuen, as Secretary of State of the State of Arkansas. Petitioner challenges the sufficiency of the ballot title of Referred Act 1 on the November 8, 1994 general election ballot. Referred Act 1 is Act 7 of the Second Extraordinary Session of 1992 and is popularly known as the Soft Drink Tax Act. The sponsor of Referred Act 1, a group known as Citizens Against Unfair Taxes ("CAUT"), was permitted to intervene and filed a motion to dismiss this action. Respondent has joined in that motion. We granted petitioner's request to expedite this case. *Walker v. McCuen*, 318 Ark. 389, 886 S.W.2d 577 (1994).

The facts giving rise to this case began on January 28, 1993, when the Attorney General certified the popular name and ballot title to respondent for a proposed referendum of the Soft Drink Tax Act. The Attorney General's certification reflects that the popular name "ARKANSAS SOFT DRINK TAX ACT" was accepted as proposed, but that the ballot title was changed to include a reference to the disposition of the revenues generated by the tax. The full text of the ballot title is appended to this opinion.

Consequently, on March 2, 1993, CAUT filed a petition with respondent to refer Act 7 on the 1994 general election ballot. On April 6, 1993, and again on April 21, 1993, CAUT supplemented the petition by submitting additional signatures in support of the proposed referendum. On August 24, 1993, respondent certified Act 7 as Referred Act 1 to appear on the 1994 general election ballot.

Petitioner filed this original action on October 24, 1994.

Petitioner requests we enjoin respondent from placing Referred Act 1 on the general election ballot, or alternatively that we enjoin respondent from counting any ballots cast for Referred Act 1.

## I. SOFT DRINK TAX ACT

The legislative history of the soft drink tax is essential to an understanding of petitioner's argument in this original action. The General Assembly created the soft drink tax when it passed Act 7 in the Second Extraordinary Session of 1992. Section 9 of Act 7 states the revenues generated from the tax would be deposited in the State Treasury as general revenues. Act 7 contained an emergency clause declaring the effective date of the act to be March 1, 1993. Act 7 is the legislative act CAUT sponsored for referendum by the electorate for approval or disapproval in the 1994 general election.

Also in the Second Extraordinary Session of 1992, the General Assembly passed Act 3, subtitled "An act to provide financial relief to the Arkansas Medicaid Program," which directed into the state's general revenues those "new revenues" generated solely from enactments of the 1992 Second Extraordinary Session, and required the first $34,300,000 of such revenues generated in the fiscal year ending June 30, 1993 to be deposited in the Grants Fund Account of the Department of Human Services for use in the Medicaid program. Act 3 contained an emergency clause declaring the act would become effective immediately upon passage and approval; the Governor signed and approved the act on December 18, 1992. CAUT did not include or make reference to Act 3 in its referendum petition.

In addition to the soft drink tax, the General Assembly passed numerous revenue-raising measures during the Second Extraordinary Session of 1992, including but not limited to: an additional excise tax on packs of cigarettes; taxes on home health care agencies, personal care service providers, long-term care facilities, nursing facilities, and intermediate care facilities for the mentally retarded; a gross receipts tax on numerous services such as providing transportation or delivery of money, providing a credit report, providing pool cleaning services, and providing indoor tanning services; a gross receipts tax on dues and fees to health and fitness clubs and private clubs permitted by the

Arkansas Beverage Control Board to dispense alcoholic beverages. Also in the Second Extraordinary Session of 1992, the General Assembly limited the amount of the 2% discount available to retailers making prompt payment of gross receipts taxes and placed a 5% penalty on the failure to make tax prepayments. Thus, the sums generated by all the foregoing measures were considered "new revenues" under Act 3.

In the regular session of 1993, the General Assembly passed Act 1073, which, in section 11, created a new fund in the State Treasury for the biennial period ending June 30, 1995, to be known as the Arkansas Medicaid Program Trust Fund ("Medicaid Trust Fund"). Section 20 of Act 1073 expressly amended section 9 of Act 7 to provide that revenues generated from the soft drink tax during the biennial period ending June 30, 1995, were to be deposited in the Medicaid Trust Fund. Act 1073 contained an emergency clause declaring the effective date to be July 1, 1993.

In the Second Extraordinary Session of 1994, the General Assembly passed Act 27 which amended Ark. Code Ann. § 26-57-908, the statute creating the Medicaid Trust Fund which had previously amended Act 7. Act 27 removed the time limitation on the existence of the Medicaid Trust Fund in the State Treasury and provided that if the Arkansas Medicaid Program should be discontinued for any reason, the revenues from the soft drink tax must be used to provide services similar to Medicaid. As stated in section 4 of Act 27, its purpose and intent were to assure that revenues from the soft drink tax would never become general revenues of the state, but would be used exclusively to provide Medicaid or similar services. Act 27 contained an emergency clause declaring it effective upon passage and approval; the Governor signed and approved the act on August 23, 1994.

## II. ARGUMENTS PRESENTED

Petitioner challenges the sufficiency of the ballot title on two bases: it is misleading and contains a fatal omission. Petitioner contends the ballot title is misleading because it falsely asserts that revenues from the soft drink tax are deposited in the state's general revenues. Petitioner argues the ballot title fatally omits the fact that the revenues from the tax are earmarked for

the Arkansas Medicaid Program. Petitioner asserts the ballot title was insufficient from the outset because of the failure to include a reference to the fact that Act 3 earmarked the revenues for Medicaid. Additionally, petitioner asserts the 1993 and 1994 amendments to Act 7 compound the insufficiencies. Thus, we are asked to evaluate the sufficiency of the ballot title in light of three other acts, namely Act 3 of the Second Extraordinary Session of 1992, Act 1073 of 1993 ("the 1993 amendment) and Act 27 of the Second Extraordinary session of 1994 ("the 1994 amendment").

Generally, respondent contends petitioner's argument must fail because its adoption by this court would allow the legislature to thwart the power of referendum expressly reserved to the people in Amendment 7. If we adopt petitioner's argument, respondent fears the legislature could simply amend any measure that has been referred to the electorate and thereby defeat the referendum. This argument is premised on the claim that the 1993 and 1994 amendments to Act 7 are unconstitutional because the right of referendum as stated in Amendment 7 precludes the legislature from amending a measure that has been referred to the people.

Respondent argues petitioner's claim regarding Act 3 must fail because Act 3 literally does not amend Act 7. Respondent points out that if the 1993 and 1994 amendments are disregarded as unconstitutional, then according to Act 7, the soft drink tax revenues are to be deposited into the general revenues of the state. Act 3 merely transfers some of the revenues from general revenues to the grants account for Medicaid. Thus, argues respondent, in reality, the soft drink tax revenues are deposited in general revenues; therefore, the ballot title is not misleading and does not contain a fatal omission.

In its motion to dismiss pursuant to ARCP Rule 12(b)(6), intervenor CAUT essentially relies on the same basic argument as respondent but contends petitioner has not stated facts upon which relief can be granted by this court.

### III. OPERATIVE DATE FOR ANALYSIS

Before we consider the merits of the petition, we must determine the operative date for our analysis of the sufficiency of the

ballot title. Of the four legislative acts described in the preceding section of this opinion, which do we consider in determining petitioner's challenge?

In its motion to dismiss, CAUT argues the operative date is the date the referendum petition was filed with respondent, March 2, 1993. CAUT's argument would require that we disregard both the 1993 and 1994 amendments. Likewise, respondent contends the operative date is the date the petition is filed with its office. Petitioner contends the operative date is August 24, 1993, the date respondent certified the referendum petition. Petitioner's contention would, for purposes of our review, require that we consider the 1993 amendment creating the Medicaid Trust Fund, but not the 1994 amendment.

This court has held that for a petition to qualify as an initiative measure under Amendment 7, the petition must, prima facie, contain at the time of filing the required number of signatures. *Casteel* v. *McCuen*, 310 Ark. 568, 838 S.W.2d 364 (1992); *Ellis* v. *Hall*, 219 Ark. 869, 245 S.W.2d 223 (1952) (per curiam); *Dixon* v. *Hall*, 210 Ark. 891, 198 S.W.2d 1002 (1946). The same rule applies to petitions for referred measures.

We hold that once a petition for referendum bearing the prima facie requisite number of signatures is filed with the Secretary of State, the people's right of referendum commences pursuant to Amendment 7. This rule protects the electorate's right of referendum early in a lengthy qualification process. Contrary to petitioner's claim, our rule does not conflict with *Wait* v. *Hall*, 196 Ark. 508, 118 S.W.2d 853 (1938), which merely states that the Secretary of State's power to extend the period for filing signatures in support of a referendum is limited to one thirty-day extension past the ninety days provided in Amendment 7.

According to the Receipt for Referendum Petitions issued by respondent to CAUT on March 2, 1993, the petition filed on that date contained 43,113 signatures while only 41,785 were required. Thus, the operative date for our analysis is March 2, 1993, the date the initial petition for referendum was filed with respondent. March 2, 1993, is the date the referendum process began and the date the referred act was held in abeyance pursuant to Amendment 7.

## IV. BALLOT TITLE ANALYSIS

■■ We turn now to our analysis of the sufficiency of the ballot title of Referred Act 1. A ballot title must be free of any misleading tendency whether by amplification, omission, or fallacy, and it must not be tinged with partisan coloring. *Bailey* v. *McCuen*, 318 Ark. 277, 884 S.W.2d 938 (1994). In addition, a ballot title must be intelligible, honest, and impartial so that it informs the voters with such clarity that they can cast their ballots with a fair understanding of the issues presented. *Id.* This court is liberal in construing Amendment 7 and in determining the sufficiency of a ballot title under that amendment. *Id.; Christian Civic Action Comm.* v. *McCuen*, 318 Ark. 241, 884 S.W.2d 605(1994). But if information omitted from the ballot title is an essential fact which would give the voter serious ground for reflection on whether to vote for the measure, it must be disclosed. *Page* v. *McCuen*, 318 Ark. 342, 884 S.W.2d 951 (1994); *Bailey*, 318 Ark. 277, 884 S.W.2d 938.

■ We recently summarized these principles into two standards. If omitted information, had it been included in the ballot title, would have given a voter serious ground for reflection on how to vote, the omission renders the ballot title insufficient. *Bailey*, 318 Ark. 277, 884 S.W.2d 938. On the other hand, if statements contained in the ballot title have a tendency to mislead the voter so as to thwart a fair understanding of the issues presented, the ballot title is likewise insufficient. *Id.*

### A. Effect of 1993 and 1994 Amendments

■ Amendment 7 is silent on the legislature's power to amend a measure once it has been referred to the people. This silence is no doubt due to the very nature of the power of referendum. Referendum is a reservation by the people of a part of the legislative power and a limitation on the full exercise of the legislative function by the legislature. *Hodges* v. *Dawdy*, 104 Ark. 583, 149 S.W. 656 (1912) (holding under prior initiative and referendum amendment). Thus, in order to preclude a legislature from defeating direct expression of popular will through the power of referendum, legislative amendments which effect legislative acts subject to referendum are not considered in evaluating the sufficiency of the ballot title. This must be if the people's reserved right of referendum is to have any meaning.

Petitioner contends the 1993 and 1994 amendments to the referred act were valid and constitutional because they were made in good faith and not for the purpose of frustrating the referendum process. Petitioner alleges the amendments were good faith attempts to clarify the General Assembly's original intent, as expressed in Act 3, to use the soft drink tax revenues solely for Medicaid purposes.

We express no opinion as to the constitutionality of the 1993 and 1994 amendments because no such opinion is required on the facts of this case. Any such opinion would be advisory in nature. This court does not anticipate future litigation and does not issue advisory opinions. *Plugge* v. *McCuen*, 310 Ark. 654, 841 S.W.2d 139 (1992).

Therefore, we hold that once a measure is referred to the people, regardless of whether it contains an emergency clause, any amendments made by the General Assembly during the referendum proceedings are held in abeyance. As the 1993 and 1994 amendments were passed by the General Assembly after the referendum proceedings began on March 2, 1993, we will not consider the 1993 and 1994 amendments when evaluating the sufficiency of the ballot title of the referred act.

B. Effect of Act 3 of Second Extraordinary Session of 1992

This court has stated that "acts passed upon the same subject must be taken and construed together." *Roachell* v. *Gates*, 185 Ark. 350, 355, 47 S.W.2d 35, 37 (1932). This rule is especially applicable where the two acts were under consideration by the General Assembly at the same time. *Id.* Citing *Roachell*, petitioner contends we must look to Act 3 when determining her claim as to the ballot title of the referred act, since Acts 3 and 7 were passed in the same session. We agree we should consider Act 3 in our analysis.

The ballot title states the soft drink tax revenues will be deposited into the state's general revenues. The referendum is on Act 7, which also states the soft drink tax revenues will be deposited in general revenues. Act 3 simply states that, for a specified and limited time, a specified and limited amount of the revenues generated from all taxes created in the Second Extraordinary Session of 1992 be transferred from general revenues

to the Department of Human Services's grants account for Medicaid. Act 3 related to numerous taxes in addition to the soft drink tax, whereas the soft drink tax alone is the subject of the referendum. Hence, there is nothing omitted from the ballot title that would give a voter serious ground for reflection when voting on the soft drink tax, nor are statements contained therein which have a tendency to mislead the voter on the issue presented — the Soft Drink Tax Act.

Petitioner's request for relief is denied, as is intervenor's motion to dismiss. The mandate is ordered issued immediately.

BROWN, J., concurs.

## ADDENDUM

The following is the complete text of the ballot title of Referred Act 1:

### ARKANSAS SOFT DRINK TAX ACT

#### (Ballot title)

AN ACT LEVYING A TAX ON SOFT DRINKS AND POWDERED DRINKS COSTING TWO DOLLARS ($2.00) PER GALLON FOR EACH GALLON OF SOFT DRINK SYRUP OR SIMPLE SYRUP SOLD OR OFFERED FOR SALE IN THE STATE, TWENTY-ONE CENTS ($0.21) PER GALLON FOR EACH GALLON OF BOTTLED SOFT DRINKS SOLD OR OFFERED FOR SALE IN THE STATE, AND TWENTY-ONE CENTS ($0.21) FOR EACH GALLON OF SOFT DRINK WHICH MAY BE PRODUCED FROM POWDER OR OTHER BASE PRODUCT, OTHER THAN A SYRUP OR SIMPLE SYRUP, SOLD OR OFFERED FOR SALE IN THE STATE; REQUIRING DISTRIBUTORS, WHOLESALERS AND MANUFACTURERS WHO SELL OR OFFER SYRUPS, SIMPLE SYRUPS, POWDERS, BASE PRODUCTS OR SOFT DRINKS FOR SALE TO RETAIL DEALERS WITHIN THE STATE TO OBTAIN A LICENSE FROM THE DIRECTOR OF THE DEPARTMENT OF FINANCE AND ADMINISTRATION; AND REQUIRING LICENSURE OF RETAILERS WHO PURCHASE SYRUPS, SIMPLE SYRUPS, POWDERS, BASE PROD-

UCTS OR SOFT DRINKS FROM UNLICENSED MAN-
UFACTURERS, WHOLESALERS OR DISTRIBUTORS;
PROVIDING THAT THE TAX SHALL BE PAID BY THE
DISTRIBUTOR, WHOLESALER, OR MANUFACTURER
WHEN THE SYRUP, POWDER, BASE PRODUCT OR
SOFT DRINK IS SOLD, AND BY A RETAILER WHO
PURCHASES SYRUPS, POWDERS, BASE PRODUCTS
OR SOFT DRINKS FROM AN UNLICENSED DIS-
TRIBUTOR, WHOLESALER OR MANUFACTURER;
DEFINING CERTAIN TERMS USED IN THE ACT;
EXEMPTING CERTAIN LIQUID OR POWDER PROD-
UCTS FROM THE TAX; PROVIDING THAT THE ACT
SHALL BE ADMINISTERED IN ACCORDANCE WITH
THE ARKANSAS TAX PROCEDURE ACT UNLESS
OTHERWISE PROVIDED; PROVIDING THAT THE PRO-
CEEDS OF THE TAX SHALL BE DEPOSITED IN THE
STATE TREASURY AS GENERAL REVENUES; THE
SAME BEING ACT 7 OF THE SECOND EXTRAORDI-
NARY SESSION OF 1992, ENACTED ON DECEMBER
21, 1992 AND EFFECTIVE ON AND AFTER MARCH 1,
1993.

ROBERT L. BROWN, Justice, concurring. I concur with the majority opinion that the original action petition should be denied and that this measure should stay on the ballot. There is no question that once a referendum petition is filed on a particular legislative act with an Emergency Clause (in this case Act 7 of 1992) that measure shall be law until the vote of the people occurs. Ark. Const. amend. 7. Amendments to that measure after the petition is filed (in this case Act 1073 of 1993 and Act 27 of 1994), however, do not affect the referendum on the measure in question. Petitioner Walker argues, hypothetically, that if a subsequent amendment goes to the lengths of repealing the act in question, that information should be given to the voting public in the ballot title. But surely under such circumstances, the issue would be moot and the proponents of the referendum would have no basis on which to proceed with it.

I agree that there is no requirement that Citizens Against Unfair Taxes begin the referendum process all over again, which would entail a renewed effort to gather signatures, simply because the General Assembly saw fit to amend Act 7 by Act 1073 of

1993 and Act 27 of the Second Extraordinary Session of 1994 after the referendum petition on Act 7 was filed. Indeed, had intervenor Citizens filed a new or even amended petition embracing those later Acts, it could well have run afoul of the mandate in Amendment 7 that the petition be filed within 90 days of the end of the session where the measure at issue was passed.

A more troublesome question is raised by Act 3 of the Second Extraordinary Session of 1992, which did become effective before Citizens' referendum petition was filed. Act 3 authorized the State Treasurer to transfer a certain amount of "New Revenue" from general revenues to the Grant Fund Account of the Department of Human Services Fund to supplement funds available for the Medicaid program, *ending June 30, 1993*. Act 3 became effective December 18, 1992. Act 7, the Soft Drink Tax, became effective on March 1, 1993, by virtue of an Emergency Clause. The referendum petition on Act 7 was filed on March 2, 1993. Petitioner Walker contends that the "New Revenue" under Act 3 includes several new revenue sources as well as the Soft Drink Tax. According to Walker, the ballot title is misleading in stating that the tax revenue goes into general revenues and not into the Department of Human Services Fund for Medicaid.

Several things are wrong with Walker's Act 3 argument. Were we to adopt this theory, it would require Citizens to hold a referendum on both Act 3 and Act 7, or at least part of Act 3, and the scope of Act 3 goes far beyond the Soft Drink Tax. For another, it is not altogether clear to what extent Act 3 would include Soft Drink Tax revenues. The Act mandates the State Treasurer to transfer $34,300,000 to the Department of Human Services Fund, but, as already mentioned, several revenue sources qualified as "New Revenue." Indeed, all revenue derived from acts of the Second Extraordinary Session of the Seventy-Eighth General Assembly qualified. Also, Act 3 was operational until June 30, 1993, which means that it was effective for merely four months after Act 7 became effective on March 1, 1993. Finally, Act 3 does not change the fact that Soft Drink Tax revenues do go into general revenues, at least initially, as the ballot title reflects.

At this late hour, it is admittedly difficult to fathom fully the interplay between Act 3 and Act 7 based on what we have before

us. Nonetheless, Amendment 7 reserves to the people the power to reject legislation by the referendum process. Intervenor Citizens is attempting to ask for a referendum on one particular act — Act 7 — and its specific terms. This it had a right to do. The fact that Act 3 may have affected the ultimate destination of Act 7 revenues for four months, although this is not altogether clear from the legislation itself, and the fact that acts after the petition was filed change Act 7 in certain respects, should not disparage the right of the intervenor to petition for the referendum on the one act as it did. The referendum right is one of the most important reserved to the people. We have said before that this right should be liberally construed and "not be thwarted by strict or technical construction." *Cochran* v. *Black*, 240 Ark. 393, 398, 400 S.W.2d 280, 283 (1966); *see also Reeves* v. *Smith,* 190 Ark. 213, 78 S.W.2d 72 (1935).

In sum, the referendum is on Act 7. The ballot title describes Act 7 accurately. The issue should now go to the people for determination.