Bill WALMSLEY, et al. *v.* W.J. "Bill" McCUEN,
Secretary of State of the State of Arkansas

94-981                                         885 S.W.2d 10

Supreme Court of Arkansas
Opinion delivered October 17, 1994

*Robert D. Smith, Tom Tanner* and *John Pagan*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Angela Jegley*, Sr. Asst. Att'y Gen., for appellee.

DAVID NEWBERN, Justice. This is an election case. The appellants, Bill Walmsley and others, sought to enjoin the appellee, Secretary of State W.J. "Bill" McCuen, from placing on the November 8, 1994, general election ballot a proposed amendment to the Arkansas Constitution. In the alternative they asked that, if votes are cast on the proposed amendment, Mr. McCuen be enjoined from counting or certifying them. The Chancellor declined to issue the injunction. We reverse and remand the case for entry of the injunction which was sought.

Proposed Constitutional Amendment #3 was referred by the General Assembly pursuant to the authority granted to it by Ark. Const. art. 19, § 22. Its purpose, according to its popular name is "to remove from the definition of lottery certain charitable games of bingo and charitable raffles." It is contended here, as it was to the Chancellor, that the injunction should issue for three reasons. First, that Mr. McCuen did not comply with the requirement of art. 19, § 22, that the proposed amendment be "published in at least one newspaper in each county, where a newspaper is published, for six months immediately preceding the next general election for Senators and Representatives, at which time the same shall be submitted to the electors of the State for approval or rejection. . . ." Second, that the proposed amendment did not receive proper approval by both houses of the General Assembly, as required by art. 19, § 22, because an unauthorized change was made in the proposal language, thus making the proposal to be presented to the electors different from that approved by at least one of the legislative bodies. The third allegation is that the ballot title is misleading. Because we hold the publication requirement of § 22 was not met, and thus the injunction should have issued, we need not address the other two points.

Mr. McCuen published a "Public Notice" on May 6, 1994. It contained the number, popular name, and ballot title of the proposed amendment, along with a statement that the full text would be published at a time and date to be announced. At the

hearing held by the Chancellor on September 9, 1994, the Elections Director of Mr. McCuen's office testified that the full text of the proposed amendment had not been published and she did not know when it would be published. She testified she followed the publication schedule set out in Ark. Code Ann. § 7-9-113 (Supp. 1993).

Subsection (b)(2) of § 7-9-113, as amended by Act 798 of 1991, provides in its relevant parts: "Publication of the notice for amendments proposed by the General Assembly shall commence six (6) months . . . before the election. Subsection (c) states: "At least one (1) notice shall contain the number, the popular name, the ballot title, and a complete text of the measure to be submitted . . . ."

In her order, the Chancellor cited § 7-9-113 along with Ark. Code Ann. § 16-3-102(b) (Repl. 1994) which provides, again in relevant part, that "when a definite time is specified for publication of constitutional amendments proposed by the General Assembly, it shall be construed to mean publication in four (4) weekly issues of some newspaper in each county as is provided by law." She noted that the amendment of § 7-9-113 was apparently an attempt to avoid the expense involved in publication, more than once, of the full text of a proposed constitutional amendment. She acknowledged that there must be at least one publication of the entire text of the amendment and noted that there would be time for Mr. McCuen to comply with that requirement prior to the November 8, 1994, general election.

The Chancellor's notion that the full text might have to be published more than one time comes perhaps from the citation by Mr. Walmsley and the other plaintiffs of an *obiter dictum* rendered in *Becker* v. *Riviere*, 277 Ark. 252, 641 S.W.2d 2 (1982). That case involved the propriety of a proposed ballot title. There, the Chancellor held that no ballot title need be submitted with respect to an amendment referred to the people in accordance with art. 19, § 22, but that the ballot title proposed was "sufficient," and thus the injunction complaining of its insufficiency was denied. We agreed with the Chancellor and pointed out that ballot titles are necessary with respect to constitutional amendments proposed pursuant to Ark. Const. amend. 7. That, we said, is so because "Amendment 7 does not require publication of the

proposed amendment except as may be required by the General Assembly, but it does provide a safeguard by specifically requiring that the proposed amendment have a ballot title," the purpose of which is to "inform the voter so that he can mark his ballot with a fair understanding of the issues presented."

Comparing the one other means of presenting a proposed amendment, we said:

> On the other hand, . . . art. 19, § 22, does not specifically require a ballot title. All that is required is that the proposed amendments under art. 19, §22, "be so submitted as to enable the electors to vote on each amendment separately." So, the purpose of the "Ballot Title" under art. 19, § 22, is not to inform the voter, but merely to distinguish and identify the amendment. Voters can be presumed to be informed as to the contents of the amendment since art. 19, § 22, specifically requires an extended publication period of six separate monthly insertions in one newspaper in each county prior to the election. *See Jones* v. *McDade*, 200 Ala. 230, 75 So. 988 (1917).

The case obviously did not turn on the necessity of six separate publications of the text of a proposed amendment, so that was not its "holding." The point, however, that no ballot title is needed for an amendment proposed in accordance with art. 19, § 22, is significant for the case before us now. Our reason for saying no ballot title was necessary in *Becker* v. *Riviere, supra*, was that the voter would be familiar with the proposed amendment because of the constitutional publication requirement. It was also made clear that we regarded the constitutional requirement as set and not subject to legislation which might purport to alter it. We made essentially the same point in *Chaney* v. *Bryant*, 259 Ark. 294, 532 S.W.2d 741 (1976), where we said "it is notable that the Constitution requires that amendments proposed by the General Assembly be published for six months before the election in a newspaper in each county, but only requires one pre-filing publication of an initiated proposal and such other publications as may be required by law."

The General Assembly's attempt to state publication requirements applicable to both types of proposals for constitutional

amendments may have been stimulated by our opinion in *Becker v. McCuen*, 303 Ark. 482, 789 S.W.2d 71 (1990), where we questioned the "double standard" for ballot titles with respect to proposals initiated pursuant to Amendment 7 and those referred pursuant to art. 19, § 22. Mr. McCuen cites that case for his argument that substantial compliance with the publication requirement is all that is required. Nothing we said in that case, however, indicated we might consider permitting any deviating from a specific requirement of the Constitution with respect to timeliness of publication. That leads to the ultimate question in this case which is whether there is such a specific constitutional requirement. There is.

■■ We cannot read art. 19, § 22, referring to amendments submitted by the General Assembly, as saying anything other than that "such proposed amendments shall be . . . published . . . for six months immediately preceding the next general election . . . ." While the words, "for six months" present some ambiguity with respect to the number of publications required, they present none as to when "such amendments" must first be published. We agree with Mr. McCuen's assertion that there is a presumption of constitutionality of the statutes in question here, and we must resolve all doubts in favor of constitutionality. *See Davis v. Cox*, 268 Ark. 78, 593 S.W.2d 180 (1980); *Clinton v. Bonds*, 306 Ark. 554, 816 S.W.2d 169 (1991). We must, however, interpret language of the Constitution according to its plain and common meaning, *Campbell v. State*, 300 Ark. 570, 781 S.W.2d 14 (1989), and the language leaves us with no doubts. Although constitutional language is to be interpreted according to the spirit of the instrument as well as the obvious and plain meaning of its words, when the words and the spirit of the Constitution are not in conflict, statutory language to the contrary must fall. *Gipson v. Manor*, 225 Ark. 975, 287 S.W.2d 467 (1956). We can find no conflict between the words and the spirit of the Constitution in this instance.

In her order following the statutory provisions for publication and holding that the statutes set up a constitutionally permissible scheme for providing notice to the electorate of the contents of amendments proposed pursuant to art. 19, § 22, the Chancellor properly expressed her doubts about the propriety of her ruling. We cannot disagree with her concern about the need

for and the cost of publication of an entire proposed amendment in a newspaper in every county that has a newspaper. Those are, however, concerns which should be addressed by the General Assembly which could propose to amend art. 19, § 22, to alter the publication requirement. That concern could, of course, be addressed by the initiative process pursuant to amend. 7. It cannot be done by the courts.

We hold that an amendment referred to the electors in accordance with art. 19, § 22, must be published "for six months" prior to the general election to which it is subject. By failing to publish the amendment at any time prior to September 9, 1994, Mr. McCuen has not complied with the requirement with respect to an amendment to be considered at the November 8, 1994, general election.

Reversed and remanded for entry of an order consistent with this opinion. The mandate is ordered issued within five days unless a petition for rehearing is filed. If a petition rehearing is filed, briefing will be on an expedited basis to be set by the clerk.

BROWN, J., concurs.

HAYS, J., dissents.

DUDLEY and GLAZE, JJ., not participating.

Special Justices BRUCE T. BULLION and ERNIE E. WRIGHT join in this opinion.

ROBERT L. BROWN, Justice, concurring. I agree with the majority opinion but would go a step further. The pertinent words in Article 19, § 22 of the Arkansas Constitution are "such proposed amendments shall be . . . published . . . for six months immediately preceding the next general election . . . ." A common sense reading of "for six months," giving the words their ordinary and commonly accepted meaning, compels full publication of the amendment more than one time. Common sense also dictates that these words do not require publication every day of the six month period. The most logical and reasonable interpretation of the phrase is that the publication must take place once a month for six consecutive months.

We said as much, albeit by *dictum*, in a previous case, as the majority correctly points out. *See Becker* v. *Riviere*, 277 Ark.

252, 641 S.W.2d 2 (1982). In *Becker*, we referred to informing the voters pursuant to Article 19, § 22 by "six separate monthly insertions in one newspaper in each county prior to the election." *Id.* at 255, 641 S.W.2d at 4. Any other interpretation of these words cannot withstand scrutiny.

STEELE HAYS, Justice, dissenting. If art. 19, § 22 were clear in its provisions I could agree with the Court in this matter. But it is not. It is manifestly inexplicit in the number of times a proposal must be published and in whether the publication of the entire text must precede the election by six months. This Court has never addressed either of those issues heretofore and our comment in *Becker* v. *Riviere*, 277 Ark. 252, 641 S.W.2d 2 (1982), was plainly dictum.

The legislature has sought to remedy the obvious ambiguity of art. 19, § 22 by the adoption of Ark. Code Ann. §§ 7-9-113 and 16-3-102(b) (Repl. 1994), effectively requiring publication "in four weekly issues of some newspaper in each county as is provided by law," and "commencing six months before the election." Here it is undisputed that on May 6, 1994, the Secretary of State published a "Public Notice" containing the Popular Name and Ballot Title of the proposed amendment now before us. (See appendix). The Chancellor held these statutory provisions were not contradictory with art. 19, § 22 and that the Secretary of State had complied with the law, as of that point in time (September 15, 1994, the date of her order). She further observed that while three additional publications were necessary to comply with the statutes, there was adequate time before the election on November 8.

We have held that a literal compliance with art. 19, § 22 is not required. *Coulter* v. *Dodge*, 197 Ark. 812, 125 S.W.2d 115 (1939); *McAdams* v. *Henley*, 169 Ark. 97, 273 S.W. 355 (1925). Since we may assume, as did the Chancellor, that prior to November 8 the proposed amendment will have been published once in its entirety and published three additional times in accordance with § 7-9-113, one of which occurred six months before the election, I cannot conclude the Chancellor clearly erred. I believe the public will have been fully and fairly apprised of the scope and nature of this proposed amendment and capable of an informed vote on its merit.

. APPENDIX

## PUBLIC NOTICE

NOTICE OF AMENDMENTS TO THE ARKANSAS CONSTI-
TUTION PROPOSED BY THE GENERAL ASSEMBLY AND
PUBLISHED BY SECRETARY OF STATE W.J. "BILL"
McCUEN

The Arkansas Constitution provides that the General Assembly
can propose up to three Constitutional Amendments to be voted
on by the public in the November General Election. The Con-
stitution also requires notice to the public on the various pro-
posed amendments. As Secretary of State it is my responsibility
to publish these notices. This notice is to make you aware of the
amendments. The full text of these amendments will be pub-
lished at a date to be announced in the various newspapers of
the state. The members of the General Assembly and I hope you
will take the time to familiarize yourself with these proposed
amendments. If you have questions, please call the Secretary of
State's Office at 1-800-482-1127.

W.J. "Bill" McCuen
Secretary of State

## PROPOSED CONSTITUTIONAL AMENDMENT #3

(Referred by the General Assembly)

### POPULAR NAME

For a proposed amendment to the Constitution of the State
of Arkansas to remove from the definition of lottery certain char-
itable games of bingo and charitable raffles.

### BALLOT TITLE

For a proposed Amendment to Article 19, Section 14 of the
Constitution of the State of Arkansas to remove from the defin-
ition of lottery as contained in Article 19, Section 14, of the Con-
stitution of the State of Arkansas, certain games of bingo and
raffles when conducted by certain authorized organizations in
accordance with the amendment.

Be it resolved by the House of Representatives of the Sev-

enty-ninth General Assembly of the State of Arkansas and by the Senate, a majority of all members elected to each house agreeing thereto.
THIS NOTICE PLACED BY SECRETARY OF STATE W.J. "BILL" McCUEN AS REQUIRED BY A.C.A. SECTION 7-9-113.