The Honorable Charlie Daniels Secretary of State Room 256, State Capitol Little Rock, Arkansas 72201-1094
Dear Mr. Daniels:
I am writing in response to your request for me to set the popular name of a question to be submitted to the voters pursuant to Act 89 of the 2nd Extraordinary Session of 2003. You also pose two questions about the required publication of this question. Specifically, Act 89 proposes to increase the "uniform rate" of ad valorem property tax millage for school districts by three mills, from twenty-five mills to twenty-eight mills. The twenty-five mill rate is set in Amendment 74 to the Arkansas Constitution. That provision authorizes the General Assembly to "by law propose an increase or decrease in the uniform rate of tax and submit the question to the electors of the state at the next general election. . . ." Amendment 74, § (b)(4).
You first note that A.C.A. § 7-9-110(a)(1) requires the Attorney General to fix and declare the popular name by which each referred measure is designated and ask me to set the popular name for this measure. You also note that Act 89, § 4, requires the measure to be "published in the same manner as provided in Arkansas Code §§ 7-9-113 and 7-5-206."[1] You note that there are two differing publication requirements contained in §7-9-113, one for constitutional amendments proposed by the General Assembly and one for "all other measures." Constitutional amendments proposed by the General Assembly must be published commencing six months before the election. Arkansas Constitution, art. 19, § 22 and A.C.A. §7-9-113(b)(2)(A). See also, Walmsley v. McCuen, 318 Ark. 269,885 S.W.2d 10 (1994).[2] With regard to "proposed or referred measure[s]," on the other hand, notice shall be published in two (2) weekly issues of some newspaper in each county commencing eight weeks before the election. A.C.A. § 7-9-113 (b)(1) and (b)(2)(B) (Supp. 2003). You state the following questions with regard to these requirements:
 Act 89 refers to the referred matter as a measure. However, passage of the measure would seem to have the effect of amending the uniform rate of tax found in Amendment 74. If the election on Act 89 were an election on a measure, then the rules for publishing notice of measures found in 7-9-113 would apply. If it were a constitutional amendment, then the rules governing the publication of notice of constitutional amendments would apply. Please provide an opinion regarding whether the Secretary of State should publish notice of this election as a measure or a constitutional amendment.
 Additionally, 7-9-113 requires at least one publication of a complete text of the measure. With regard to Act 89, please provide an opinion regarding the text that must be published to meet this requirement.
RESPONSE
Although my duty to set a popular name for this measure is not entirely clear, I have, in an abundance of caution, fixed and declared the popular name for this matter below. Although it is a little unclear how to properly characterize the matter, in my opinion it is either an "act" of the General Assembly that is being submitted to the people under the express authority of Amendment 74 or simply a "question" submitted to the voters under that Amendment. It is not, in my opinion, a "constitutional amendment" for purposes of the relevant publication requirements. In response to your final question regarding the complete "text" that must be published, it is my opinion that this term refers to the language contained in Section 5 of Act 89, which would add A.C.A. § 26-80-208, to the Arkansas Code upon the people's affirmative vote.
Because resolution of each of your three questions requires a determination of the proper classification of the matter proposed in Act 89, I will address your questions together.
Act 89 is entitled "AN ACT TO INCREASE THE UNIFORM RATE OF AD VALOREM PROPERTY TAX BY THREE (3) MILLS SUBJECT TO THE APPROVAL OF THE VOTERS IN THIS STATE TO BE USED SOLELY FOR MAINTENANCE AND OPERATION OF PUBLIC SCHOOLS; AND FOR OTHER PURPOSES." Act 89 contains legislative "findings," levies a 28 mill uniform rate (subject to approval of the voters), provides for publication and certification of the measure by the Secretary of State and details a new Arkansas Code provision (A.C.A. § 26-80-208), that would be added to the Arkansas Code upon the people's affirmative vote. Act 89, §§ 1, 3, 4 and 5.
Act 89 also sets out a comprehensive ballot title for the matter in question and a form for presenting the question to the voters in a "FOR" and "AGAINST" format. See Act 89, § 4(d).[3] It does not mention a popular name. Section 7-9-110 (a)(2) of the Arkansas Code, however, requires the Attorney General to "fix and declare the popular name by which each amendment to the Arkansas Constitution and each initiated and referred measure shall be designated." An "amendment" is defined as "any proposed amendment to the Arkansas Constitution, whether proposed by the General Assembly or by the people." A.C.A. § 7-9-101(2). A "measure" is defined as "either an amendment or an act." A.C.A. § 7-9-101(6). An "act" is defined as "any act having general application throughout the state, whether originating in the General Assembly or proposed by the people." A.C.A. § 7-9-101(1). My duty is thus to fix the popular names for initiated and referred "amendments" or "acts."
You have raised an issue concerning the proper classification of the action undertaken in Act 89. Is the matter submitted to the people under Act 89 an amendment, an act, or simply a question presented to the voters? The classification of the action dictates the appertaining procedural requirements about which you have inquired, including publication, my duty to set the popular name of the issue, and the exact "text" to be published. If the matter is a constitutional amendment, rather than an act or a "question," the more onerous publications requirements contained in Arkansas Constitution, art. 19, § 22 and7-9-113 apply. If the matter is simply a "question" presented to the voters and not an amendment or an act, my duty to set the popular name may not attach and there may be no actual "text" to publish as contemplated by A.C.A. § 7-9-113.
The applicable language of Amendment 74 states that the "General Assembly may by law propose an increase or decrease in the uniform rate of tax and submit the question to the electors. . . ." Arkansas Constitution, Amendment 74, § (b)(4). (Emphasis added). As an initial matter, in my opinion, this language contemplates the passage of an act of the General Assembly, like Act 89, proposing an increase or decrease in the uniform rate, rather than a constitutional amendment.
The context of the language used in Amendment 74 itself supports this conclusion. The same rules of construction and interpretation apply to both constitutional provisions and statutes. Gazaway v. Greene CountyEqualization Bd., 314 Ark. 569, 864 S.W.2d 233 (1993). The primary goal and fundamental rule in the interpretation of either is to give effect to the intent of the people or legislature, as applicable. Rockefeller v.Hogue, 244 Ark. 1029, 429 S.W.2d 85 (1968), Faubus v. Kinney,239 Ark. 443, 389 S.W.2d 887 (1965) (constitutional provisions); Rosario v.State, 319 Ark. 764, 894 S.W.2d 888 (1995) (statutes). The intent of the people or legislature is ordinarily determined by reference to the plain meaning of the words used. Hercules, Inc. v. Pledger, 319 Ark. 702,894 S.W.2d 576 (1995).
In my opinion the authorization in Amendment 74 for the General Assembly to "by law" propose increases in the uniform rate of tax entails the power to pass an act of the General Assembly that proposes an alteration to the uniform rate. The words "by law" are particularly important as used in this context. In my opinion the meaning and inclusiveness of the word "law" can vary with the context in which it is used. The word "law" is sometimes, depending upon the context, however, construed to include only "acts" of the General Assembly. See e.g., Whittemore v. Terral,140 Ark. 493, 215 S.W. 686 (1919). Amendment 74 therefore authorizes the General Assembly to "by law" propose a change in the uniform rate and to submit the "question" to the people.
There is no suggestion that the General Assembly, however, under Amendment 74, has the power to propose a constitutional amendment to alter the uniform rate. It is illustrative to compare and contrast the language of Amendment 74 in this regard with the language of Amendment 70
to the Arkansas Constitution, which concerns the salaries of the state's executive and legislative officers. Amendment 70 provides that "[i]n addition to the three amendments to the Constitution allowed pursuant to Article 19, § 22, either branch of the General Assembly at a regular session thereof may propose an amendment to the Constitution to change the salaries for the offices. . . ." (Emphasis added). Clearly this language envisions the General Assembly proposing a constitutional amendment to change the relevant salaries, with all the attendant requirements surrounding the submission of such amendments.[4]
In contrast, Amendment 74, in my opinion, contemplates the General Assembly's passage of an act proposing an increase in the uniform rate, with an accompanying submission of the question to the people for their adoption or rejection.[5] Although, as you suggest, an increase in the uniform rate of tax through this mechanism would have the effect of changing the current twenty-five mill rate set in Amendment 74, there is no suggestion that the actual language of Amendment 74 will be amended thereby. Cf. Arkansas Constitution, Amendment 51, § 19 (giving the General Assembly the power, in the same manner as required for amendment of laws initiated by the people, to amend certain sections of Amendment 51). It has been stated that a constitutional amendment "repeals or changes some provisions in, or adds something to, the instrument amended." Stovall v. Gartrell, 332 S.W.2d 256 (Ky. 1960), quoting Wilsonv. Crews, 160 Fla. 169, 34 So.2d 114 (1948). See also generally, 16 C.J.S. Constitutional Law, § 6(a). Although an increase in the uniform rate would thus have the effect of supplementing the twenty-five mills levied by Amendment 74, the constitution is not amended thereby. Cf.e.g., Arkansas Constitution, Amendment 70, § 3 (authorizing the General Assembly to increase the salaries of executive and legislative officers in certain restricted amounts through subsequent appropriations and thereby supplement and affect the actual salary figures set in Amendment 70).
The pertinent provisions of Act 89 bear out the conclusion that the Arkansas Constitution will not be amended by the action it proposes. In both the ballot title for the measure set out in the act and the statutory amendment that will be effective if approved by the voters, Act 89 states that the uniform rate of twenty-eight mills is "equal to the twenty-five (25) mills levied under Arkansas Constitution, Amendment 74, and an additional three (3) mills levied under this section." Act 89, § 4(d) and § 5(a)(2). This assertion contemplates that the actual language in Amendment 74 setting the uniform rate at twenty-five mills will not be altered.
It is therefore my opinion, although the matter is not entirely free from doubt, that Act 89 is not a constitutional amendment for purposes of the publication requirements pertaining thereto.
The next question for resolution is whether the matter is the referral of an "act" to the people, or whether it is simply the presentation of a "question" to the voters.
My duty under A.C.A. § 7-9-110 (a)(2) attaches to "referred measure[s]." Again the word measure is defined as either an "amendment" or an "act."See A.C.A. § 7-9-101. I have concluded above that the matter is not a constitutional amendment. In this case, the question is whether the matter undertaken is a "referred" "act" of the General Assembly. Again, that would be a rare occurrence under our Constitution. See n. 5, supra.
If this is such an occurrence, it is my duty to fix and declare the popular name for the matter under A.C.A. 7-9-110(a)(2). If it is not a referred "act," but merely a ballot "question," my duty, strictly speaking, does not attach.
The law was clarified somewhat on this issue by the amendment of both A.C.A. § 7-9-110 and § 7-9-101 in 1993. As originally enacted in 1933 (see Acts 1933, No. 71, §§ 1 and 2), what is now A.C.A. § 7-9-110
mentioned the setting of popular names for amendments and "initiated and referred measures. . . ." "Measures" was not defined. The title ofAct 71 of 1933 made reference to "initiated and referred acts (emphasis added)," but the emergency clause mentions only "the measures to be voted on by the people." There was some ambiguity in the 1933 act, therefore, as to the precise types of measures for which a popular name should be fixed. In 1993, however, both A.C.A. § 7-9-110 and the definitional section for the subchapter, A.C.A. § 7-9-101 (first adopted in 1943), were amended.[6] See Acts 1993, No. 512. This 1993 act had the effect of making the definitions in § 7-9-101 (adopted in 1943), applicable to the language used in § 7-9-110 (adopted in 1933). The 1993 law changed the introductory language in 7-9-101, making the definitions in that section applicable not just for purposes of the 1943 "act," but for purposes of the entire "subchapter." My duty to fix and declare popular names under current law is therefore restricted to "amendments" and "acts" as defined in § 7-9-101(1); (2); and (6). The Attorney General's duty to provide a popular name for other questions has not been deemed to attach. Such questions would include, for example, ballot questions presented to the people in connection with bond issues requiring the assent of the people under Arkansas Constitution, Amendment 20.
My duty to fix and declare popular names under A.C.A. § 7-9-110 is therefore restricted to "acts" and "amendments." Although I have already concluded that this matter is not a constitutional amendment, it is unclear whether Amendment 74 requires the referral of an entire act proposed by the General Assembly to the people, or simply requires the "question" of changing the uniform rate to be thus submitted. Again, Amendment 74 authorizes the General Assembly to "by law" propose an increase or decrease in the uniform rate and submit the "question" to the electors of the state. Act 89 in some ways reflects an amalgam of these two options, copiously detailing in the ballot title the new Arkansas Code provision that would be added by the people's affirmative vote, but asking them to vote not for the adoption or rejection of Act 89 itself or the newly added code provision, but only on the question of whether the uniform rate shall be increased. See Act 89, § 4(d)(2).
I have found no controlling definition of a "referred" measure for purposes of A.C.A. § 7-9-110(a)(2), or of a "referred act" as opposed to a referred "question." A "referendum," however, is a "reservation by the people of a part of the legislative power and a limitation on the full exercise of the legislative function by the legislature." Walker v.McCuen, 318 Ark. 508, 515, 886 S.W.2d 577 (1994). See also, Railey v.City of Magnolia, 197 Ark. 1047, 126 S.W.2d 273 (1939) and Combs v.Gray, 170 Ark. 956, 281 S.W. 918 (1926). This broad definition would appear to encompass the action taken under Amendment 74 and Act 89. Other cases, however, make finer distinctions as to what constitutes a "referendum" and hold that it only applies to instances in which the law-making body has already passed a complete and effective law or act, which is thereafter sought to be undone by the people and not to instances where the vote of the people is necessary before a law or ordinance proposed by the law-making body ever takes effect. See SantaClara County Local Transportation Authority v. Guardino,11 Cal. 4th 220, 45 Cal. Rptr.2d 207, 902 P.2d 225 (1995), citing ReferendumCommittee v. City of Hermosa Beach, 184 Cal. App.3d 152,229 Cal. Rptr. 51 (1986) and Whitmore v. Carr, 2 Cal. App.2d 590,38 P.2d 802 (1934). This more restrictive definition would not appear to encompass the actions taken under Amendment 74 and Act 89. The statute proposed to be adopted in Act 89 (A.C.A. § 26-80-208), would not be effective absent an affirmative vote of the people.
In my opinion, in all likelihood, the matter Act 89 places before the voters is a ballot question, rather than a constitutional amendment or a referred "act" of the General Assembly. As a consequence, the less stringent publication requirements in A.C.A. § 7-9-113 apply[7] and strictly speaking, my duty to set a popular name for the measure does not attach. In an abundance of caution, however, and because of the applicable legislative history surrounding 7-9-110, I will, pursuant to A.C.A. § 7-9-110(a)(2), fix and declare a popular name for this matter.
The following is hereby fixed and declared as the popular name for the measure in question:
 (Popular Name) To Increase the Statewide Uniform Rate of Ad Valorem Property Tax for Maintenance and Operation of Schools By Three (3) Mills, From Twenty-Five (25) Mills to Twenty-Eight (28) Mills
As for your remaining question, concerning the full "text" to be published pursuant to A.C.A. § 7-9-113, again, the issue is unclear due to the problematic classification of the matter Act 89 submits to the voters. Section 7-9-113(c) requires "at least one (1) notice [to] contain the number, the popular name, the ballot title, and a complete text ofthe measure to be submitted. . . ." (Emphasis added). Again, "measure" is defined in A.C.A. § 7-9-101(6) as "either an amendment or an act." This subchapter therefore contemplates publication of the full text of the amendment or act that is being referred to the voters. As I have concluded above, it is doubtful whether Act 89 submits an "act" to the people for their adoption or rejection. It appears to submit a question (the question of raising the uniform rate), to the people, and if they approve the question, a new statute, (A.C.A. § 26-80-208), will become effective. As a consequence it is unclear what "text" must be published in order to comply with A.C.A. § 7-9-113(c). Again, however, in an abundance of caution, I suggest that the proposed statutory code section that will become law upon the affirmative vote of the electors (proposed A.C.A. § 26-80-208), be published as the complete "text" of the measure.
Deputy Attorney General Elana C. Wills prepared the foregoing opinion, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General
MB:ECW/cyh
[1] Arkansas Code Annotated § 7-5-206 requires the county boards of election commissioners to post notice of election matters certified to them by the Secretary of State on the courthouse door.
[2] Article 19, § 22 requires such measures to be "published in at least one newspaper in each county, where a newspaper is published, for six months immediately preceding the next general election. . . ." The court in Walmsley, supra, stated that: "[w]hile the words, "for six months" present some ambiguity with respect to the number of publications required, they present none as to when "such amendments" must first be published." A concurring justice, however, noted that: "[t]he most logical and reasonable interpretation of the phrase is that the publication must take place once a month for six consecutive months." Id. at 274, (Brown, J. concurring).
[3] The question presented to the voters is phrased as follows: " FOR increasing the established uniform rate of ad valorem property tax by three (3) mills from twenty-five (25) mills to a total of twenty-eight (28) mills. AGAINST increasing the established uniform rate of ad valorem property tax by three (3) mills from twenty-five (25) mills to a total of twenty-eight (28) mills."
[4] But see, Amendment 70, § 3 allowing certain annual "salary adjustments" by appropriation act.
[5] This authority is a specific exception to the general rule that ". . . no measure shall be submitted to the people by the General Assembly, except a proposed constitutional amendment or amendments as provided for in this Constitution." Amendment 7 ("General Provisions") ("Majority"). See also Op. Att'y Gen. 2000-327 (noting that since the adoption of this provision of Amendment 7, several constitutional provisions, including Amendment 74, have been adopted which require an affirmative vote of the people in certain instances).
[6] This 1993 amendment also transferred the responsibility for fixing popular names from the Governor, Secretary of State and State Comptroller to the Attorney General.
[7] Although ordinarily it might be prudent to nonetheless comply with the more onerous publication requirements applicable to constitutional amendments, there is a practical problem in complying with the six-month publication requirement of Arkansas Constitution, art. 19, § 22. The first publication necessary to comply with this requirement would presumably occur in May, 2004. This would necessarily be at a time before the effective date of Act 89, which contains no emergency clause. It will not be effective until ninety days after the extended recess of the General Assembly, which would be sometime in June. See Amendment 7 ("Statewide Petitions") ("Referendum"). A question arises, therefore, as to whether the Secretary of State could undertake publication of a matter pursuant to the directive of an as yet ineffective act.